EXHIBIT 1

# NATIONAL REGISTERED AGENTS, INC

## SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To: RICK HILL, ATTORNEY
STRUCTURAL GROUP
10150 OLD COLUMBIA RD.
COLUMBIA, MD 21046

SOP Transmittal # **535880046**

800-592-9023 - Telephone

Entity Served:  STRUCTURAL TECHNOLOGIES, LLC  (Domestic State: MARYLAND)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc or its Affiliate in the State of COLORADO on this 17 day of July, 2019. The following is a summary of the document(s) received:

1.  **Title of Action:**  Agri-Systems, etc., Pltf. vs. Structural Technologies, LLC, etc., Dft.

2.  **Document(s) Served:**   Other: Summons, Complaint, Attachment(s)

3.  **Court of Jurisdiction/Case Number:** Weld County District Court, CO
    Case # 2019CV30588

4.  **Amount Claimed, if any:**  N/A

5.  **Method of Service:**

    _X_ Personally served by:     _X_ Process Server      ___ Law Enforcement       ___ Deputy Sheriff        ___ U. S Marshall

    ___ Delivered Via:           ___ Certified Mail       ___ Regular Mail         ___ Facsimile

    ___ Other (Explain):

6.   **Date and Time of Receipt:**   07/17/2019 01:44:00 PM CST

7.   **Appearance/Answer Date:**  Within 21 days after such service upon you

8.   **Received From:**       Andrew J. Manion          9.  **Carrier Airbill #** 1ZY041160199801267
                              Manion Stigger LLP
                              20 N.W. First Street, Suite 200
                              Evansville, IN 47708          10. **Call Made to:** Not required
                              812-425-5200

11.     **Special Comments:**
SOP Papers with Transmittal, via  UPS Next Day Air

Image SOP

Email Notification,  RICK HILL  rhill@structuraltec.com

Email Notification,  ELOISE BROWN  ebrown@structuraltec.com

Email Notification,  AL LIPPERINI  ALIPPERINI@STRUCTURALGROUP.COM

Email Notification,  JESSICA AARON  JAARON@STRUCTURAL.NET

Email Notification,  MICHELLE OVERBAY  moverbay@structuraltec.com

Email Notification,  BETTY SASS  bsass@structuraltec.com

Email Notification,  SHERI STEWART  licensing@structuraltec.com

**NATIONAL REGISTERED AGENTS, INC**                    **CopiesTo:**

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL

# NATIONAL REGISTERED AGENTS, INC
## SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To:  RICK HILL, ATTORNEY
 STRUCTURAL GROUP
 10150 OLD COLUMBIA RD.
 COLUMBIA, MD 21046

SOP Transmittal #  **535880046**

800-592-9023 - Telephone

Entity Served:   STRUCTURAL TECHNOLOGIES, LLC  (Domestic State: MARYLAND)

Transmitted by   Amy McLaren

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF WELD, STATE OF COLORADO** <br> Address: 1150 O St. <br> Greeley, Colorado 80631 | DATE FILED: July 11, 2019 9:46 PM <br> FILING ID: 16938380F6487 <br> CASE NUMBER: 2019CV30588 |
| **Plaintiff:** Agri-Systems d/b/a ASI Industrial, a Montana corporation <br><br> v. <br><br> **Defendant:** Structural Technologies, LLC, a Maryland limited liability company | ▲   COURT USE ONLY   ▲ |
| **Attorneys for Plaintiff:** <br> Andrew J. Manion, Atty Reg. # CO 50774 <br> Manion Stigger LLP <br> 20 N.W. First Street, Suite 200 <br> Evansville, IN 47708 <br> Phone: (812) 425-5200 <br> Email: ajmanion@manionstigger.com <br><br> Bret Gunnell, Atty Reg. # CO 24579 <br> Beltzer Bangert & Gunnell, LLP <br> 7900 E. Union Ave., Suite 920 <br> Denver, CO 80237 <br> Phone: (720) 576-7225 <br> Email: bret@bbglaw.com | Case Number: <br><br> Division          Courtroom |
| **SUMMONS** ||

The People of the State of Colorado, to the named Defendant(s):

**STRUCTURAL TECHNOLOGIES, LLC**
Registered Agent: National Registered Agents, Inc.
7700 E. Arapahoe Rd., Ste 220
Centennial, CO 80112

You are hereby summoned and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response

within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you Your answer must be accompanied by a filing fee.*

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, judgment by default may be entered against you by the Court for the relief demanded in the Complaint, without any further notice to you.

The following documents are also served with this Summons and Complaint: *Exhibits to the Complaint.*

DATED this 11th day of July, 2019.

By:  s/ Andrew J. Manion
    Andrew J. Manion, Atty Reg. # CO 50774
    Manion Stigger, LLP
    20 N.W. First Street, Suite 200
    Evansville, IN  47708
    Phone: (812) 425-5200
    Email:  ajmanion@manionstigger.com

    s/ Bret R. Gunnell
    Bret Gunnell, Atty Reg. # CO 24579
    Beltzer Bangert & Gunnell, LLP
    7900 E. Union Ave., Suite 920
    Denver, CO 80237
    Phone: (720) 576-7225
    Email:  bret@bbglaw.com
    *Attorneys for Plaintiff*

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF WELD, STATE OF COLORADO**<br>Address: 1150 O St.<br>Greeley, Colorado 80631 | DATE FILED: July 11, 2019 9:46 PM<br>FILING ID: 16938380F6487<br>CASE NUMBER: 2019CV30588 |
| **Plaintiff:** Agri-Systems d/b/a ASI Industrial,<br> a Montana corporation<br><br>v.<br><br>**Defendant:** Structural Technologies, LLC,<br> a Maryland limited liability company | |
| | ▲ COURT USE ONLY ▲ |
| **Attorneys for Plaintiff:**<br>Andrew J. Manion, Atty Reg. # CO 50774<br>Manion Stigger LLP<br>20 N.W. First Street, Suite 200<br>Evansville, IN 47708<br>Phone: (812) 425-5200<br>Email: ajmanion@manionstigger.com<br><br>Bret Gunnell, Atty Reg. # CO 24579<br>Beltzer Bangert & Gunnell, LLP<br>7900 E. Union Ave., Suite 920<br>Denver, CO 80237<br>Phone: (720) 576-7225<br>Email: bret@bbglaw.com | Case No.:<br><br>Division: |
| **COMPLAINT** ||

Comes the Plaintiff, Agri-Systems d/b/a ASI Industrial ("ASI"), by counsel, and, for its Complaint in the above-styled action, states and alleges as follows:

PARTIES

1.    ASI is a Montana corporation with its principal place of business at 1300 Minnesota Avenue in Billings, Montana.

1

2.     Structural Technologies, LLC ("Structural Technologies") is a Maryland limited liability company with its principal place of business at 10150 Old Columbia Road in Columbia, Maryland.

## JURISDICTION AND VENUE

3.     Structural Technologies transacts business within the State of Colorado and has an office at 5161 Ward Road, Suite 1, Wheat Ridge, Colorado 80033.

4.     The subcontract which forms the basis for the claims asserted in this Complaint was made, and to be performed, in the State of Colorado.

5.     This Court may exercise personal jurisdiction over Structural Technologies as Structural Technologies has transacted business within the State of Colorado and the claims asserted in this Complaint arise from Structural Technologies' transaction of business within Colorado.

6.     Venue is proper in Weld County as the subcontract which forms the subject of this action was performed in Weld County.

## BACKGROUND FACTS

7.     ASI is a contractor experienced in the design and construction of, among other things, industrial silos.

8.     ASI entered into a contract with Omaha Track Company ("Owner") to design and construct six silos with a 40-foot interior diameter and a 135-foot height ("the Project").

9.     The Project's concrete silos were to be built using a slip form concrete construction method where the 135-foot height was to be poured in a single continuous pour spanning several days.

2

10.     The designed circumferential strength of the concrete silos comes from reinforcing steel imbedded in the concrete during the construction process.

11.     Structural Technologies specializes in structural engineering solutions such as circumferential reinforcing steel required in the concrete silos for the Project; Structural Technologies designs and is the exclusive manufacturer for VSL post-tensioning products and construction systems in the United States.

12.     On or about June 25, 2018, ASI and Structural Technologies entered into a Subcontract pursuant to which Structural Technologies agreed to furnish and install post-tensioning tendons in the form of sheathed unbonded steel strands and anchorages for use in the construction of the Project pursuant to the Project design.  A true and accurate copy of the Subcontract is attached hereto as Exhibit 1.

13.     Pursuant to the Subcontract, Structural Technologies was to furnish design, supervision, labor, and equipment relating to the installation of strand channels to slip form yokes prior to the slip as necessary for timely installation of the strands, installation of strands during slip-form pour operations and, after the concrete silos were sufficiently cured, removal of recessed forms and tension the embedded strands to complete the circumferential reinforcement.

14.     Structural Technologies' design responsibilities relating to the Project also included, but were not limited to the design, specifications, and computations for reductions in applied prestressing forces due to friction, anchor slip, concrete shrinkage, and steel relaxation, for expected strand elongations during jacking, for the quantity of strands required and positioning of strands and strand anchors, for details relating to the installation components of the post-tensioning system needed to achieve satisfactory performance, and for other related design work concerning or pertaining to post-tensioning at and for the Project.

3

15.     As an experienced provider of structural reinforcing for concrete structures, Structural Technologies was familiar with the requirements for pre-construction coordination prior to commencing the slip as well as the time-related demands during the continuous progression of a slip form pour.

16.     Prior to commencing construction, ASI planned and coordinated construction activities with Structural Technologies through meetings and related communications concerning the silo design, engineering, site layout, arrangement of the slip-form platform, bulkhead configuration, slip form schedule, and other information and things pertinent for Structural Technologies to plan, schedule, and perform its work.

17.     After coordinating construction activities with ASI, Structural Technologies delivered and staged for installation sheathed prestressing strands and anchorages for use in the construction of the Project.

18.     Structural Technologies failed to perform as either promised or coordinated.

19.     Structural Technologies failed to work in a good and workmanlike manner in that, but not limited to, by failing to furnish design work free of defects, by failing to furnish sufficient skilled laborers for performance of the work, by failing to work in a good and workmanlike manner, and by failing to complete its work in accordance with the Subcontract including meeting the required schedule.

20.     Structural Technologies' failures relating to its performance resulted in the incomplete and inadequate installation of the tendons and strands required to accomplish the circumferential structural strength needed for the completed concrete silos.

21.     Despite notice from ASI that certain of its work was defective, Structural Technologies failed to repair, remedy, replace, or otherwise cure the defects in its work.

4

22.     ASI has incurred damages in an amount exceeding the minimum required for jurisdiction in this Court as a direct result of Structural Technologies' breach of the Subcontract, with such damages including property damage to components of the Project that were designed and/or installed by other entities other than Structural Technologies at or for the Project.

<u>COUNT I - BREACH OF CONTRACT</u>

23.     ASI realleges and incorporates herein all of the allegations contained in Paragraphs 1 through 22 of this Complaint.

24.     Structural Technologies breached its obligations under the Subcontract in that but not limited to the following respects:

a.     Structural Technologies failed to properly design and/or install post-tensioning strands in the silos in a good and workmanlike manner, free from defects, and in conformance to the requirements of the Subcontract.  In some instances, Structural Technologies' negligence included a failure to install the post-tensioning strands at all and, in other instances, the post-tensioning strands were installed in a negligent and defective manner.

b.     Structural Technologies failed to supply a work force sufficient in number and skills to perform work of the nature required under the Subcontract.

c.     Structural Technologies failed to perform the work required under the Subcontract in accordance with the schedule required, or to maintain sufficient progress, to permit construction of the silos under the slip form method contemplated under the Subcontract.

d.     Structural Technologies failed to cure negligent and defective work which it had performed following notice and demand by ASI.

25.     At all times relevant to the claims asserted in this Complaint, ASI complied with its obligations under the Subcontract.

26.     As a result of Structural Technologies' breach of the Subcontract, ASI has incurred additional costs in the completion and correction of the work which Structural Technologies was required to perform under the Subcontract.

27.     As a result of Structural Technologies' breach of the Subcontract, ASI has incurred additional costs in the performance of ASI's obligations under its contract with Owner.

28.     As a result of Structural Technologies' breach of the Subcontract, ASI has incurred attorneys' fees costs and legal fees incurred in enforcing the Subcontract.  Pursuant to the terms of the Subcontract, Structural Technologies is obligated, in the event of a dispute, to pay ASI's costs and legal fees incurred in enforcing the Subcontract.

29.     ASI is contractually entitled to recover its legal fees and costs incurred herein from Structural Technologies.

30.     ASI's additional costs in completing and correcting Structural Technologies' work and in performing ASI's contractual obligations to Owner exceed the minimum amount required for jurisdiction in this Court.

## COUNT II - BREACH OF WARRANTY

31.     ASI realleges and incorporates herein all of the allegations contained in Paragraphs 1 through 30 of this Complaint.

32.     Structural Technologies expressly warranted to ASI that its employees were "experienced and skilled in the construction of structures and improvements of the type described in the Contract Documents" applicable to the Project.

6

33.     Structural Technologies was aware that the silos involved in the Project were being constructed using a slip form concrete method.

34.     Structural Technologies represented and warranted to ASI that the workforce it furnished for performance of its obligations under the Subcontract would be experienced and skilled in the construction of structures using a slip form concrete method.

35.     The workers supplied to the Project by Structural Technologies lacked the skill and experience in slip form concrete construction to perform the work required under the Subcontract in a productive and efficient manner.

36.     The failure to supply workers with the skill and experience in slip form concrete construction to perform the work required under the Subcontract in a productive and efficient manner constituted a breach of Structural Technologies' warranty to ASI.

ASI has incurred damages in an amount exceeding the minimum required for jurisdiction in this Court as a result of Structural Technologies' breach of warranty.

WHEREFORE, Plaintiff prays for relief as follows:

1.     That Plaintiff recover from Defendant, under Count I of the Complaint, Plaintiff's damages incurred as a result of Defendant's breach of contract;

2.     That Plaintiff recover from Defendant, under Count II of the Complaint, Plaintiff's damages incurred as a result of Defendant's breach of warranty;

3.     That Plaintiff recover from Defendant its costs and legal fees incurred in enforcing the Subcontract, including those incurred in this proceeding;

4.     That Plaintiff recover pre-judgment and post-judgment interest on all amounts awarded herein; and

5.      That Plaintiff be accorded any and all other relief to which it may properly appear

entitled.

Dated this 11th day of July, 2019.

By:  s/ Andrew J. Manion
      Andrew J. Manion, Atty Reg. # CO 50774
      Manion Stigger, LLP
      20 N.W. First Street, Suite 200
      Evansville, IN  47708
      Phone: (812) 425-5200
      Email:  ajmanion@manionstigger.com

      s/ Bret R. Gunnell
      Bret Gunnell, Atty Reg. # CO 24579
      Beltzer Bangert & Gunnell LLP
      7900 E. Union Ave., Suite 920
      Denver, CO 80237
      Phone: (720) 576-7225
      Email:  bret@bbglaw.com
      *Attorneys for Plaintiff*

## SUBCONTRACT AGREEMENT

DATE FILED: July 11, 2019 9:46 PM

**Contractor:**

Agri Systems d/b/a ASI Industrial 16938380F6487
1800 Minnesota Avenue NUMBER: 2019CV30588
Billings, MT 59101-0000

**Contractor's Authorized Representative:**

Robert Hamlin
Agri Systems d/b/a ASI Industrial
(406) 245-6231
Email: rhamlin@asi-industrial.com

**Subcontractor:**

Structural Technologies, LLC (VSL)
5161 Ward Road, Ste 1
Wheat Ridge, Co 80033

**Project:**              Post Tension of 6 Pack Slip form Silos
**Owner:**                Omaha Track Company
**Subcontract Amount:**   $232,500.00

**Payment Application Submittal Date:**   20th day of month

**Exhibits incorporated in this Subcontract:**

Exhibit A – Scope of Work
Exhibit B – Terms and Conditions of Subcontract
Exhibit C – Form of Affidavit in Support of Payment
Exhibit D – Form of partial waiver of lien
Exhibit E – Form of final waiver of lien
Exhibit F – Insurance Requirements
Exhibit G – Form of Change Order

Agri Systems d/b/a ASI Industrial ("Contractor") retains Subcontractor to satisfactorily and timely provide and perform the work, labor, supervision, equipment and materials required to fulfill the Scope of Work set forth in Exhibit A pursuant to the Contract Documents (as defined in the Terms and Conditions of Subcontract) in exchange for Contractor's payment of the Subcontract Amount in the method and manner provided in this Subcontract Agreement.

IN WITNESS WHEREOF, the parties have executed this Subcontract Agreement as of the date indicated.

Agri Systems d/b/a ASI Industrial

By: _Robert H Hamlin_

Its: _President_

Date: _6-25-18_

"Contractor"

Structural Technologies, LLC

By: _____

Its: _VP_

Date: _6.25.18_

"Subcontractor"

Rev. 5/29/18

1/24

Structural Technologies LLC
5161 Ward Road, Suite 1
Wheat Ridge, CO 80033
phone: 303 456 9887
fax:    303 456 9796



struc'tur'al
TECHNOLOGIES
A Structural Group Company



## SCOPE OF WORK

- Furnish VSL unbonded post-tensioning tendons including .60" diameter 270 ksi coated and sheathed prestressing strand, and anchorages (bearing plate, recess former and wedges). The Total Cost is based on 163 strands per silo for a total of 978 strands approximately 140 ft. in length. All strands are 360 degrees around the silo and tensioned from both ends for a total of 1,956 anchorages. The post-tensioned height is assumed as 80 ft. beginning 40 ft. above the foundation.
- Furnish supervision, labor, and equipment to install strand channels to slip form yokes, install strands during slip operations, remove recess forms, tension strands and remove stressing tails.
- Furnish placement drawings for VSL post-tensioning work.

## SCHEDULE CONDITIONS

- Total Cost is based on VSL performing its work in one move-in for all six silos with unrestricted, uninterrupted job site access for the duration of VSL's work, per a mutually agreed upon written schedule and subcontract.
- Shipment of material can commence within 10 working days of receipt of approved VSL placement drawings, per a mutually agreed upon written schedule.
- Job site deliveries shall be in full truckload shipments.
- Buyer shall expedite the approval process for all VSL submittals.

## BUYER SHALL PROVIDE AT NO COST TO VSL

- All weather truck access to job site.
- Parking and sanitary facilities for VSL employees near work areas.
- Adequate on-site storage for all material and equipment.
- Furnishing and maintenance of trash container in the work area for VSL's use.
- Operated forklift (6500# capacity) for moving materials and equipment.
- Install and remove anchorage recess forms.
- Placement of post-tensioning anchorages on forms.
- Labor and materials and labor for filling anchorage recesses.
- Remove and dispose of strand channels from slip form yokes.
- Electrical power at base of each work location as required by VSL.
- Work areas and platforms for strand installation and tensioning.

## EXCLUSIONS

- Furnishing and placement of all mild steel reinforcing.
- All carpentry work including bulkheads, formwork, shoring, scaffolding, and design thereof.
- All concrete work including furnishing, placing, finishing, and curing.
- Union labor and prevailing wage requirements.
- Material sampling and testing.
- Domestic origin material requirements.
- Cost of bonds, sales taxes, use taxes, permits and licenses.

2/24

### Exhibit B - Terms and Conditions of Subcontract Agreement

These Terms and Conditions of Subcontract Agreement govern the Subcontract using the terms for Project, Contractor, Subcontractor and Owner as identified on the cover sheet of the Subcontract Agreement and which retain the identity and definition of each as set forth therein.

**1. Subcontract Work.** Subcontractor shall furnish, deliver, and pay for all labor, equipment, services, supervision and materials and perform all of the work necessary or incidentally required for the completion, strictly pursuant to and as reasonably inferred from: this Subcontract and plans and specifications for the Project, the contract between the Contractor and Owner for the Project (or between Contractor and any Prime Contractor—such contract is generally, "the Prime Contract"), any General, Special, Supplementary Conditions, and all Exhibits identified and incorporated by reference into this Subcontract (the foregoing, together with the Prime Contract, are hereinafter referred to as "the Contract Documents"), or that part of the work covered by the Contract Documents, and the Project Schedule (as defined herein) and all governing laws, regulations and ordinances and including design where required by the Contract Documents, the work set forth on Exhibit A to this Subcontract ("the Work" or "Subcontractor's Work" or "Subcontract Work").

Subcontractor assumes toward Contractor and Owner all obligation, rights, duties, and redress arising from or relating to Subcontractor's Work that Contractor assumes toward Owner and others under the Contract Documents. The Contract Documents are applicable to this Subcontract and are, therefore, incorporated herein by reference and made a part of this Subcontract. In the event of conflicts between Contract Documents other than Exhibit A, the document that imposes the most stringent requirement will govern.

Subcontractor understands and agrees that the Contract Documents are complementary, and what is required by one shall be binding as if required by all, unless specifically stated otherwise. In the event of a conflict between Contract Documents involving quality or quantity, the highest quality and the greatest quantity shall be furnished.

Subcontractor understands and agrees that the intent of Exhibit A is to define the scope of labor, equipment, material, supervision, and services that are to be provided by Subcontractor in furtherance of the construction of the Project, and not to define other rights, responsibilities, or liabilities. Notwithstanding any terms or conditions in Exhibit A that purport to define rights, responsibilities, or liabilities related to the contract amount, payments, Subcontractor's representations or warranties, lien rights, damages, time for prosecuting the Work, changes, Subcontractor's on-site presence, protection of persons and property, indemnity, termination, Contractor's responsibilities, claims and dispute resolution, assignment, choice of law, damages, or waiver, no such terms or conditions therein shall supplement, supersede or control over any conflicting, inconsistent, or relevant term of this Exhibit B or other Contract Document.

Subcontractor represents and warrants to Contractor that it and its employees are experienced and skilled in the construction of structures and improvements of the type described in the Contract Documents and it has examined the Contract Documents and the real property on which the Work will be located as indicated as the address of the Project on the cover page of the Subcontract ("Site"), and has familiarized itself with the local conditions and all other factors impacting the successful completion of the Work and Subcontractor agrees that the design for Subcontractor's Work depicted in the Contract Documents can be constructed on the Site. Subcontractor understands and agrees that the plans and specifications for the Project were prepared by independent design professionals working for others and, as a result, Contractor does not warrant the fitness, accuracy or completeness of such plans and specifications. Subcontractor agrees to promptly report to Contractor any errors, inconsistencies, omissions, or violations of legal requirements Subcontractor discovers. Subcontractor shall be liable to Contractor for damages resulting from any such errors, inconsistencies, omissions, or violations of legal requirements which Subcontractor discovers and fails to report to Contractor.

Should the proper and accurate performance of the Work depend upon the work performed by Contractor, Owner, other subcontractors or any other persons engaged in Work beyond Subcontractor's scope of Work, Subcontractor shall inspect such work and report in writing to Contractor any defects which render it unsuitable for proper execution of the Work.

$\frac{3}{24}$

### Exhibit B - Terms and Conditions of Subcontract Agreement

Should Subcontractor fail to notify Contractor of any defects or non-conformities then Subcontractor shall be deemed to have accepted such defects and non-conformities

Subcontractor assumes toward Contractor and Owner all obligations, rights, duties, and redress arising from or relating to Subcontractor's Work that Contractor assumes toward Owner and others under the Contract Documents. The Contract Documents are applicable to this Subcontract and are, therefore, incorporated herein by reference and made a part of this Subcontract. In the event of conflicts or inconsistencies regarding Subcontractor's scope of work as between the Prime Contract and this Subcontract, the Prime Contract shall govern. In the event of conflicts or inconsistencies of any other variety, this Subcontract shall govern.

**2. Subcontract Amount.** For Work satisfactorily and timely completed hereunder, Contractor agrees to pay to Subcontractor the sum set forth on the first page of the Subcontract identified as "Subcontract Amount." The duty to make and the right to receive payments are subject to the terms and conditions of this Subcontract.

**3. Payments.** Within ten (10) days of the execution of this Subcontract, Subcontractor shall submit to Contractor (a) an accurate W-9 certificate, and (b) a proposed schedule of values subdividing the Work into sub-categories for billing analysis purposes. Unless expressly permitted by Contractor in writing, no sub-category on Subcontractor's schedule of values shall account for more than ten percent (10%) of the Subcontract Amount or $100,000.00, whichever is less. Subcontractor shall revise the proposed schedule of values upon Contractor's request and, once accepted by Contractor, the accepted schedule of values shall provide a basis for any invoices submitted.

Subcontractor may make applications for periodic progress payments, less 10% retainage, for work satisfactorily performed when set forth in an application for payment submitted in electronic form, on or before the date of the month stated on the cover page of this Subcontract, using the form attached hereto as Exhibit G and each application for payment shall be accompanied by (a) an affidavit in support of payment in the form of Exhibit C to the Subcontract, (b) a verified partial lien and claim waivers for Subcontractor's work as well as that of its sub-subcontractors, materialmen and suppliers in an aggregate amount of the application for payment utilizing the form provided as Exhibit D, and (c) evidence reasonably adequate to demonstrate that previous periodic progress payments have been disbursed to sub-subcontractors and materialmen in accordance with the applications therefor. Invoices or other applications for payment not presented in this form or missing required enclosures do not create a right to receive or a duty to make payment and they will not be paid. Where work is performed in jurisdictions with statutes governing retainage and related withholdings, this provision shall be deemed revised to conform to and the parties will follow the applicable statute.

Subcontractor may make an application for final payment, not to exceed one hundred percent (100%) of the Subcontract amount, after Subcontractor completes its obligations hereunder to the full satisfaction of Contractor, Owner and Architect (or Engineer), if any. At the time of submission of its application for final payment, Subcontractor shall provide the following information: (a) an affidavit in the form of Exhibit C with supporting documentation indicating all payments to subcontractors and suppliers proving that there are no claims, obligations or liens outstanding or unsatisfied for labor, services, material, equipment, taxes or other items performed, furnished or incurred for or in connection with the Work which will in any way affect Owner's interests utilizing the form included as Exhibit D to the Subcontract; (b) verified conditional final lien and claim waivers for its work as well as that of its sub-subcontractors, materialmen and suppliers in an aggregate amount of the final contract amount including change orders, if any, and utilizing the form included as Exhibit E to the Subcontract; (c) consent of Subcontractor's surety, if any, to final payment; and (d) all operating manuals, warranties and other deliverables required by the Contract Documents. Invoices or other applications for payment not presented in this form or missing required enclosures will be returned without action and will not be paid.

Where corresponding payments by the Owner are made, Subcontractor's properly submitted Applications for Payment will be paid 7 days after Contractor receives the corresponding payment from Owner. Notwithstanding any provision in this Subcontract or any other Contract Documents to the contrary, no payment (including, but not limited to, any periodic progress payment or final payment, or payment for extras, change orders, delays, or acceleration of the Work) will be due

**Exhibit B - Terms and Conditions of Subcontract Agreement**

Subcontractor until Contractor has received payment for Subcontractor's Work from Owner. Contractor's receipt of payment from Owner for Subcontractor's Work is a condition precedent to any payment by Contractor to Subcontractor. Subcontractor acknowledges that it relies on the credit of the Owner for payment, and that Subcontractor bears the risk of nonpayment by the Owner for any reason. Acceptance of final payment shall constitute a waiver of all claims by Subcontractor relating to Subcontract Work but does not relieve Subcontractor of liability for warranties or for nonconforming or defective work discovered after final payment. Neither partial nor final payment to Subcontractor shall operate as approval and acceptance of work done or materials furnished under this Subcontract.

Acceptance of final payment shall constitute a waiver of all claims by Subcontractor relating to Subcontract Work but does not relieve Subcontractor of liability for warranties or for nonconforming or defective work discovered after final payment. Neither partial nor final payment to Subcontractor shall operate as approval and acceptance of work done or materials furnished under this Subcontract.

Contractor may withhold the whole or any part of any payment to Subcontractor to such extent as may be necessary to protect Contractor from loss as a result of any of the following, whether arising from this Project or any other project: (a) incomplete, non-conforming or defective work; (b) claims filed or reasonable evidence indicating probable filing of claims, including lien claims, involving or arising out of Subcontractor's performance; (c) damage to Contractor's, Owner's or their respective contractors work; (d) failure of Subcontractor to make payments when due to its subcontractors, sub-subcontractors, materialmen and suppliers; (e) reasonable insecurity regarding Subcontractor's intention or ability to continue with the proper and timely performance of the Work; (f) failure of Subcontractor to perform or comply with any of its obligations under the Contract Documents; (g) any other breach of this Subcontract or any other agreement between Contractor and Subcontractor.

Subcontractor shall keep the Project free of mechanics liens and payment claims. Subcontractor will defend and hold Contractor harmless from and against such liens or payment claims. Within ten (10) days of Contractor's demand, Subcontractor shall discharge or satisfy any mechanics lien or payment claim asserted by any individual or entity working for or supplying material to Subcontractor. Contractor may deduct from any amounts due or to become due to Subcontractor any sum or sums owing by Subcontractor to Contractor; and in the event of any breach by Subcontractor of any provision or obligation of this Subcontract or in the event of the assertion by other parties of any claim or lien against the Owner, Contractor or the premises arising out of Subcontractor's Work, Contractor may retain all or part of any payments due or to become due to Subcontractor an amount sufficient to completely protect Contractor from any and all loss, damage or expense therefrom, including actual and anticipated attorneys' fees and costs, until the situation has been satisfactorily remedied or adjusted by Subcontractor.

In the event Contractor has information that Subcontractor has failed to properly and fully compensate one of its sub-subcontractors or material vendors on the Project and monies are otherwise due to Subcontractor, Subcontractor agrees that Contractor may issue checks jointly payable to Subcontractor and the unpaid sub-subcontractor or material vendor.

**4. Submittals and Substitutions.** Subcontractor shall deliver to Contractor timely submittals, including shop drawings, product data and samples within fourteen days of Subcontractor's execution of this Subcontract. Subcontractor's submission of the submittals to Contractor is a condition precedent to Contractor's obligation to process and/or pay any Subcontractor application for payment. to allow for an orderly and proper coordination of the Work. Subcontractor shall not make any substitutions in the Work or procedures or methods specified in the Contract Documents unless it first receives written approval for such substitution. Subcontractor shall bear any costs and fees related to such substitution. Any variances from the Contract Documents shall be specifically identified in Subcontractor's submittals. Contractor's review and approval shall not relieve Subcontractor of its responsibilities to perform the Work in accordance with the Contract Documents unless Subcontractor and Contractor gain from Architect and Owner prior express written approvals for any such variance. Subcontractor shall make all revisions to the submittals requested by Contractor.

5/24

**Exhibit B - Terms and Conditions of Subcontract Agreement**

**5. Records.** Subcontractor shall keep a complete set of accounts and records on a cost accounting basis, conforming to accepted accounting principles, showing all receipts and expenditures under this Subcontract. Contractor shall have the right to audit and shall be afforded access upon reasonable notice to Subcontractor to all Subcontractor's records, books, correspondence, instructions, drawings, receipts, vouchers, memoranda and similar data relating to this Subcontract for a minimum period of three years after final payment, or for the minimum period of record retention set forth in the Prime Contract, which period is longer.

**6. Confidential Information.** All plans, drawings, specifications and the subject matter contained therein and all other information received by Subcontractor in connection with performance of this Subcontract involve valuable property right of Contractor and shall be held confidential by Subcontractor, shall remain the property of Contractor and shall not be used by Subcontractor for any purposes other than whose for which they have been supplied or prepared. Subcontractor agrees that itself, its sub-subcontractors, materialmen and suppliers will keep confidential the making of this Subcontract and the terms hereof. Subcontractor agrees not to use for publicity purposes any photographs drawings and/or materials in connection with the performance of this Subcontract without obtaining the prior written consent of Contractor and upon completion of this Subcontract, Subcontractor shall return all material given Subcontractor as aforesaid. Subcontractor agrees to include a confidentiality provision substantially similar to this Section 5 in its agreements with its sub-subcontractors, materialmen and suppliers.

**7. Warranty.** Subcontractor warrants to the Owner, Architect and Contractor and each of their respective successors and assigns that materials and equipment furnished under this Subcontract will be new, unless otherwise required by the Contract Documents, of good quality, free from defects of workmanship or materials and will conform to the requirements of the Contract Documents, and that the Work performed hereunder will be good and workmanlike, free from defects and will conform to the requirements of the Contract Documents. Work (workmanship or materials) not conforming to these requirements, including substitutions not properly approved or authorized, may be considered defective. Subcontractor shall defend, pay all costs incurred, and hold Contractor harmless from Subcontractor's failure to adhere to or follow this Subcontract including, but not limited to, claims concerning or defects in Subcontractor's Work.

**8. Correction of Defective Work.** Prior to and within one year of Contractor's delivery of possession of the Project to Owner ("Delivery of Possession") or within such longer period to the extent required by the Contract Documents, Subcontractor shall, within 48 hours' of receipt of written notice from Contractor that the Work is not in conformance with the Contract Documents, correct the defective Work at its own cost and time and bear the expense of the additional services required for the correction of any defective Work, including the correction, removal or replacement of the defective Work and any damage caused to other parts of the Work or the Project affected by the defective Work. If Subcontractor fails to correct the defective Work within such 48 hour period, Contractor may, in addition to any other remedies provided under the Contract Documents, commence correction of such defective Work with its own forces or a third party and, in such event, Subcontractor shall be responsible for all costs incurred by Contractor for such correction. If the defective Work creates an emergency requiring an immediate response, the 48 hour period identified herein shall be deemed inapplicable. Any time period for the duty to correct work referenced herein or in the Contract Documents applies only to Subcontractor's obligation to correct such defective Work upon demand and is not intended to constitute a period of limitations for any other rights or remedies Contractor may have regarding Subcontractor's obligations under the Contract Documents.

**9. Time.** Time is of the essence of this Subcontract. Subcontractor acknowledges that it is bound by the scheduling requirements of the Contract Documents and those of Contractor (cumulatively, the "Project Schedule"), which may be amended from time to time prior to the time when the Project achieves Substantial Completion. Subcontractor agrees to promptly begin Work as soon as notified by Contractor and shall diligently and continuously prosecute and complete the Work in accordance with the requirements of the Contract Documents including but not limited to the date of Substantial Completion, the Project Schedule, and any other milestone dates set forth therein. Subcontractor agrees to cooperate with, and coordinate its Work activities so as not to interfere with those parties performing work at the Site, including

6/24

Exhibit B - Terms and Conditions of Subcontract Agreement

Owner's and Contractor's separate contractors, so that the Project can be completed pursuant to the Project Schedule in an orderly and coordinated manner without disruption.

Within ten (10) days after execution of the Subcontract, Subcontractor shall prepare and submit to Contractor a detailed schedule for the performance of the Work ("Work Schedule"). The Work Schedule must conform to all requirements of this Subcontract including, without limitation, the Project Schedule.

Subcontractor shall maintain and update the Work Schedule throughout the performance of the Work, and at times requested by Contractor. All updates to the Work Schedule shall be in accordance with the time and sequence provided for by the Project Schedule as it may be adjusted. Any updates to the Work Schedule shall not relieve Subcontractor of its obligation to perform as required by the Project Schedule. Subcontractor warrants that its Work Schedule, as may be amended to accommodate the Project Schedule then in effect, will allow Contractor to maintain the Project Schedule. By submitting the Work Schedule and any requested updates thereto Subcontractor represents that the Work Schedule and such other schedules, updates, revisions and reports it prepares are reasonable when considering all conditions and factors bearing on the performance of the Work and accurately reflect Subcontractor's reasonable expectations as to the sequence and duration of Work items, productivity, projected and actual completion of any Work item or activity, and delays or problems expected or encountered and specified float time. Subcontractor shall maintain the personnel, material and equipment as required to assure the various stages of the Work are completed as required by the Work Schedule. Subcontractor agrees to re-sequence its work, accelerate its efforts through Saturday / weekend work, weekday overtime and/or provide multiple crews if required to maintain or facilitate the Work Schedule. Subcontractor acknowledges that Subcontractor's timely performance of the Work is an essential condition of the Subcontract and agrees that any failure to perform and complete the Work consistent with such dates shall be a material default of the Subcontract. If Subcontractor fails to adhere to the Work Schedule, misses any milestone in any such schedule, fails to accelerate or re-sequence when requested to accommodate the Project Schedule, or if Subcontractor abandons the Project, suspends its Work, or fails to have sufficient workers on site and productively employed for three (3) days or more, Contractor may, without prior notice and without waiving any other right or remedy available in law or equity, terminate this Subcontract or take steps necessary to complete or expedite the Work, including supplementing Subcontractor's efforts by completing the Work or any portion thereof by using Contractor's own resources or hiring other contractors, at the expense of Subcontractor.

Subcontractor shall give timely notices to authorities pertaining to the Work and shall be responsible for all permits, fees, licenses, assessments, inspections, testing and taxes necessary to complete the Work.

Contractor shall not be liable to Subcontractor for any delay, disruption, or interference to the Work caused by the act, omission, neglect or default of the Owner or its respective contractors, subcontractors, sub-subcontractors, materialmen and suppliers, or by any other cause beyond Contractor's direct control; provided, however, Contractor will advance any just claim Subcontractor has pursuant to paragraphs Error! Reference source not found. and 26 of this Subcontract. Subcontractor shall be entitled to such extensions of time as Contractor may receive from the Owner, to the extent they are applicable to Subcontractor's Work, and to no other extensions of time for delays beyond Contractor's control. Subcontractor shall not be entitled to and shall make no other claim for damages, including but not limited to direct, consequential or incidental damages, arising out of or relating to delays, disruptions, suspensions, accelerations, inefficiencies, or impacts upon the Work. Subcontractor shall be bound to Contractor by the same liquidated damages provisions under the Prime Contract, if any.

10. Changes; Impacts. When Contractor orders changes to the Work in a writing signed by Contractor's Authorized Representative, Subcontractor, without nullifying this Subcontract, shall make any and all changes in Subcontract Work, which are within the general scope of this Subcontract, whether additive or deductive, irrespective of the root of such change. Upon receipt of a request for change issued by the Owner or Contractor, or if Subcontractor becomes aware of any event or circumstance which Subcontractor believes necessitates a change in the Subcontract Price, Work Schedule, or any other provision of the Subcontract, Subcontractor shall, within seven (7) days of receipt of such written order or

## Exhibit B - Terms and Conditions of Subcontract Agreement

the occurrence of such event or circumstance, and in any event ten (10) days before Contractor must provide notice and documentation under the Prime Contract, submit a written request to Contractor for an adjustment to the Subcontract Price, Work Schedule or other provision of the Subcontract which Subcontractor believes is affected thereby. Subcontractor's written request shall include documentation sufficient to enable Contractor to determine the factors necessitating the adjustment(s) being requested, including without limitation a price breakdown itemized as requested by Contractor and in sufficient detail to permit an analysis of all material, labor, equipment, costs, and information in sufficient detail to permit an analysis of the proposed adjustment to the Subcontract. Subcontractor shall not claim and shall not be entitled to any time extension, cost reimbursement, compensation or damages for any change, delay, disruption or interference to the Subcontract Work except to the extent that Contractor is entitled to and has secured a corresponding time extension, cost reimbursement, compensation or damages from the Owner under the Contract Documents and applicable law.

Upon receipt of the documentation from Subcontractor, Contractor shall review the request and, to the extent the request for change involves the Owner, submit such request for change on behalf of Subcontractor. Contractor, provided an adjustment is warranted, will issue to Subcontractor a written change order on the form of Exhibit G to this Subcontract adjusting the Work, Subcontract Price, Work Schedule and/or other provision of the Subcontract, to become effective by the signatures of Subcontractor and Contractor's Authorized Representative ("Change Order"). The executed Change Order shall be the full and final adjustment with respect to the event or circumstance prompting or giving rise to any change in Subcontract Price, Work Schedule, or any other provision of the Subcontract including all direct, indirect or cumulative impacts howsoever arising or occurring.

All changes in the Work authorized by Change Order shall be performed under the applicable conditions of the Contract Documents. No extra work or Change Orders under this Contract or payment obligation will be due, become due, or will be recognized or paid by Contractor unless, before said additional work or material is furnished and Contractor's Authorized Representative and Subcontractor execute a written Change Order. Timesheets, work tickets, field documents or other related Subcontractor documents, irrespective of whether signed by Contractor's on-site personnel, project management, or any Contractor employee, agent, consultant or other individual other than Contractor's Authorized Representative, shall not constitute a Change Order hereunder, shall neither modify nor alter any term of this Subcontract, or its terms, nor serve as a course of dealing to modify this Subcontract, and shall serve only to acknowledge performance of work. No individual or entity has any authority to order work or changes on behalf of Contractor other than Contractor's Authorized Representative. Notwithstanding anything contained herein to the contrary, Contractor's receipt of compensation from Owner for extra work, changed work or changed circumstance from the Prime Contract shall be a condition precedent to Subcontractor's right to payment for the same. Subcontractor will be bound by the decisions of Owner regarding any extended time of performance applicable to a change, if any.

If any change reduces the quantity of the Work, Subcontractor shall not make any claim for, and shall not be entitled to, loss of anticipated profit.

Where Contractor performs work or supplies equipment or materials on Subcontractor's account, back-charges do not require and will not necessarily result in a formal written amendment or require agreement and will be billed at net costs plus a management fee of 20%. Net costs is defined as the cost of all labor, materials, tools, equipment, insurance and taxes.

**11. Subcontractor's On-site Presence.** Before performing any Work on the initial day on the Site, each employee of Subcontractor or Subcontractor's lower tier subcontractors or suppliers must report in-person to Contractor's Authorized Representative or his designee. Subcontractor shall maintain at the project a superintendent, foreman or other such representative and such individual, by such placement, is hereby authorized to make agreements for or otherwise act on behalf of Subcontractor. Subcontractor shall not place signs of any kind upon the project site without Contractor's prior written approval. If Subcontractor relies upon sub-subcontractors or other lower tier or independent contractors to perform the Work and does not intend to maintain at the Project superintendent, foreman or other such representative

**Exhibit B - Terms and Conditions of Subcontract Agreement**

that is an employee of Subcontractor, then (a) Subcontractor shall designate in writing to Contractor an individual working with one of Subcontractor's sub-subcontractors authorized to make agreements for or otherwise act on behalf of Subcontractor, and (b) Subcontractor shall cause one of its management level employees to visit the site not less than one time per month while the Work is being performed and each such visit shall be coordinated with Contractor's project manager and onsite supervision with sufficient prior notice to accomplish an onsite meeting.

**12. Contractor Furnished Materials.** All equipment, supplies, materials and other items furnished by Contractor or Owner ("Contractor Furnished Materials"), if any, as part of the Work will be installed or incorporated into the Work at the expense of Subcontractor, unless otherwise indicated herein. Subcontractor shall verify the quantity and condition of such Contractor Furnished Materials when delivered to it, acknowledge receipt thereof in writing to Contractor, and immediately report any damage or shortage to Contractor. Title to Contractor Furnished Materials shall at all times remain with Owner or Contractor, as the case may be. Subcontractor, upon delivery and acceptance of any Contractor Furnished Material, assumes the risk of, and shall be responsible for, any loss thereof or damage thereto.

**13. Protection of Persons and Property.** Subcontractor shall comply in all respects with any safety policies and/or obligations demanded of Contractor in the Prime Contract. Subcontractor shall follow any Subcontractor Safety Agreement adopted or included in the Subcontract. Without limiting and only in addition to the foregoing, Subcontractor agrees to the remaining obligations in this Section and will at all times be solely responsible for the safety and well-being of its employees, for its work and for complying with all applicable laws, ordinances, codes and regulations in connection with the Work to be performed hereunder, including those relating to safety of all persons and property even if Contractor or Owner have implemented any safety program or regulations at the project or jobsite. Subcontractor shall establish and implement its own safety program implementing safety measures, policies and standards conforming to those required by the Contract Documents, this Subcontract, and those required or recommended by the federal, state and local governmental or quasi-governmental authorities having jurisdiction. If there is a conflict between the sources of authority, the one imposing the most stringent requirement shall govern.

Subcontractor shall take all reasonable precautions for the safety of, and shall provide all necessary protection to prevent damage, injury or loss to: (i) individuals at the Project and other persons who may be affected thereby; (ii) all Work and all materials and equipment to be incorporated therein; and (iii) other property at the project site or adjacent thereto. The Subcontractor shall give all notices and comply with all applicable laws, ordinances, rules, regulations and orders of any public authority bearing on the safety of persons and property and their protection from damage, injury or loss. Subcontractor shall notify Contractor immediately following any accident and promptly confirm the notice in writing. The Subcontractor shall be liable to Contractor for and will promptly remedy all damage or loss to any property caused in whole or in part by the Subcontractor, or anyone directly or indirectly employed by the Subcontractor, or by anyone for whose acts the Subcontractor may be liable.

Subcontractor shall implement, communicate and enforce a policy designed to ensure the safety of all workers on the Project Site and complies with all federal, state and local safety statutes, regulations, ordinances, rules and codes governing the Work. Subcontractor shall defend, indemnify and hold Contractor harmless from and against fines and penalties imposed upon or affecting Contractor resulting from, relating to or concerning Subcontractor's Work and/or failure to comply with applicable safety laws, ordinances or regulations. Contractor may deduct the amounts of any unpaid penalties, fines or fees from amounts otherwise due Subcontractor.

Until such time as the Work is completed and finally accepted by Owner and Contractor, Subcontractor shall bear the risk of loss for damage to, or loss or destruction of the Work, and such materials or equipment, and Subcontractor shall, at its expense, repair or replace to Contractor's satisfaction, all damage to, or loss or destruction of, the Work or such materials or equipment which results from any cause whatsoever.

**Exhibit B - Terms and Conditions of Subcontract Agreement**

Subcontractor shall designate one or more Competent Persons (as defined by OSHA). Subcontractor must have at least one Competent Person on Site while the Subcontractor is performing Work.

Subcontractor shall provide Material Safety Data Sheets for all hazardous substances brought onto the Project Site by Subcontractor or any of its sub-subcontractors, vendors or agents. In the event Subcontractor causes hazardous substances to be brought to the Site, through Subcontractor's own acts or omissions or those of its sub-subcontractors, materialmen, suppliers, or agents or any other person for whom Subcontractor is responsible, Subcontractor shall further provide any additional precautions needed to protect individuals that may be affected by such hazardous substances.

No material, appliances, supplies or equipment delivered for the benefit of the project may be removed from the job site without Contractor's prior written consent.

Subcontractor agrees to perform all patching of any character arising from Subcontractor's Work. Any failure in this regard may be performed or supplemented by Contractor at Subcontractor's expense. Prior to undertaking any cutting or drilling operations, Subcontractor shall verify that no structural or other damage will be caused by the cutting or drilling process. No structural member shall be cut or drilled without prior written approval from Contractor.

**14. Duty to Facilitate Jobsite Communications for Non-English Speaking Individuals.** In addition to and without limiting or modifying Subcontractor's performance and safety-related obligations in this Subcontract and the Contract Documents, Subcontractor has a duty to facilitate jobsite communications involving Subcontractor, its employee and its agents. If Subcontractor chooses to employ and/or rely upon individuals who cannot adequately comprehend written and spoken English so as to promote a safe work environment, Subcontractor shall, at all times that such non-English speaking individual(s) are present on the jobsite, maintain, at Subcontractor's expense, a translator on-site who can interpret to and from English the language spoken or understood by such non-English speaking individual(s). This requirement is a matter of job-site safety and Subcontractor is free to employ any such individual so long as the conditions herein are consistently met.

**15. Immigration Law Compliance.** Subcontractor shall employ only United States citizens and aliens who are authorized to work in the United States and shall not unlawfully discriminate on the basis of citizenship or national origin. Subcontractors acknowledges and agrees that in compliance with the Immigration Reform and Control act of 1986, each new employee of Subcontractor, as a condition of employment, must complete the Employment Eligibility Verification Form I-9 and present documentation establishing identity and employment eligibility.   Subcontractor agrees to require that all sub-subcontractors and lower tier contractors be subject to the same terms of contract regarding immigration law compliance.

**18. Drug-Free Workplace.** Contractor and Subcontractor are committed to providing all workers a drug-free workplace. To ensure a drug-free workplace, all individuals working on-site on behalf of Subcontractor (whether directly employed by or retained by Subcontractor or one of its lower tier contractors) shall participate in a program of both annual and random drug-testing.   Each employee working on-site on behalf of Subcontractor (whether directly employed by or retained by Subcontractor or one of its lower tier contractors) must be able to produce proof, upon Contractor's request, demonstrating: (a) that the employee is tested on an annual basis by a facility approved by the National Institute for Drug Abuse ("NIDA"), (b) that the employee, within the 12 month period preceding the request , was tested by a NIDA-approved facility and was determined to be free of illegal substances, (c) that the employee has agreed to submit to random drug testing by a NIDA-approved testing facility upon not more than three business days' prior notice to the employee, and (d) that the employee has not refused a request for random drug testing.

Contractor is subject to random audits for documentation proving this commitment to a drug-free workplace.   If Subcontractor cannot produce adequate documentation proving all employees working on-site on its behalf have fulfilled the above testing obligation and Contractor suffers a monetary penalty or fine as a result, Subcontractor agrees to

$\frac{10}{2A}$

## Exhibit B - Terms and Conditions of Subcontract Agreement

Indemnify and hold Contractor harmless from any such monetary penalty or fine and further agrees that Contractor may deduct the costs of any such monetary penalty or fine from funds otherwise due Subcontractor hereunder.

**14. Clean up.** Subcontractor shall clean and continuously keep its portion of the Project and surrounding area clean and free of debris, including, but not limited to, regular removal of construction trash, waste, debris, and removal of all dirt and mud from any and all roadway surfaces both on the Site and at the Site's ingress and egress points. Upon Substantial Completion of the Work, or any portion of the Work, Subcontractor shall remove all debris, trash, construction wastes, materials, equipment, machinery and tools arising from the Work or applicable portions thereof to permit Owner to occupy the Project or that portion of the Project for its intended use. If Subcontractor fails to clean up as provided herein, Contractor may back-charge and withhold or otherwise recover from Subcontractor all resulting cleanup costs incurred.

**15. Right of Occupancy.** Whenever it may be useful or necessary to do so, Contractor or Owner shall be permitted to occupy and use any portion of the work which has been either partially or fully completed by Subcontractor before final inspection and acceptance thereof by the Owner, but such use or occupation shall not relieve Subcontractor of its warranty of said work and materials nor of its obligation to make good at its own expense any defect in materials and workmanship which may occur or develop prior to Contractor's release from responsibility to the Owner; provided, however, that Subcontractor shall not be responsible for any damage thereto that is due to or caused by the negligence of Contractor or Owner during such period of use.

**16. Conduct.** Subcontractor's employees, agents, contractors, subcontractors, representatives, persons, and/or supervisors who are or may be involved in the performance of the Work ("Subcontractor Personnel") shall conduct themselves in a manner that is lawful, courteous, businesslike and respectful of all others. Subcontractor Personnel shall not utilize any constructed or partially constructed improvements for personal use. Subcontractor Personnel shall park only in the areas designated by Contractor. Subcontractor Personnel shall not engage in behavior that is rude, threatening, or offensive. Use of profane or insulting language is prohibited. Abusive, derogatory, obscene or improper language, gestures, remarks, whistling, cat calls or other disrespectful behavior is prohibited. Subcontractor personnel shall not use, possess, distribute or sell any weapon, alcohol, illegal drug, or controlled substance. Contractor shall have the right, exercisable at any time upon notice to Subcontractor and at Contractor's discretion, to require Subcontractor to remove any of Subcontractor Personnel who are or may be involved in the performance of the Work that Contractor deems to be; (a) performing in an unsatisfactory manner; (b) not qualified to perform the Work; or (c) engaging in misconduct or prohibited behavior. Subcontractor will promptly comply with any such direction and will promptly furnish a qualified replacement as necessary to maintain the Project Schedule and the current Work Schedule at no additional cost to Contractor. Contractor will have no responsibility to pay Subcontractor for the services of terminated Subcontractor Personnel after the applicable termination date and in no event for unsatisfactory Work that results in re-work.

**17. Assumption of Liability.** Subcontractor shall be responsible to Contractor for the consequences of Subcontractor's acts and omissions as well as that of Subcontractor's employees, its agents, assigns and other persons arising from or relating to the Work. The Subcontractor agrees to assume entire responsibility and liability for all damages or injury to all persons, and to all property, arising out of or in any manner connected with execution of the Work under this Subcontract including suits and claims occurring both prior to and subsequent to the completion of the Subcontractor's Work.

In addition to other duties expressed herein or existing in law, and to the fullest extent permitted by law, Subcontractor shall retain the services of a duly licensed attorney experienced in the area of construction law acceptable to Contractor to defend (at Subcontractor's sole expense) and assume the liability of Owner, Contractor, their respective agents and employees, and any other parties which Contractor has agreed to defend or assume liability for in the Contract Documents, (collectively, "the Defended Parties") from and against claims, suits, losses, causes of action, damages, liabilities, fines, penalties and expenses, including attorneys' fees, arising out of or resulting from the performance of the Work, provided that such claim, damage, loss or expense (1) is or is alleged to be attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom; and (2) is caused or is alleged to have caused in whole or in part by any act or omission of Subcontractor or any of Subcontractor's

**Exhibit B - Terms and Conditions of Subcontract Agreement**

subcontractors, anyone directly or indirectly employed by any of them or for anyone for whose acts any of them may be liable, regardless of whether it is caused in part by any of the Defended Parties. Subcontractor shall not be obligated to defend any of the Defended Parties for claims found to be due to the sole negligence or willful misconduct of the Defended Parties. Where work is performed in jurisdictions governed by statutes strictly limiting Subcontractor's obligation in this section, this provision shall be severable and the Subcontractor's obligation shall be limited so as to conform to the governing statute(s) but in all other jurisdictions the Subcontractor's obligation shall be construed to the fullest extent permitted by governing law as expressed in this section. Where the damage, loss or expense is covered by insurance maintained by Contractor or Owner and Contractor is responsible for any insurance deductible, such deductible is a cost to be covered by Subcontractor's obligation.

Subcontractor's obligation in this section of the Subcontract shall not be construed to negate, abridge, or otherwise reduce any other right or obligation which would otherwise exist as to any party or person described in the Contract Documents. The obligations to defend and pay for any such costs as stated in this section shall not be restricted in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for Subcontractor under workers' compensation acts, disability benefits acts, or other employee benefits acts, and shall extend to and include any actions brought by or in the name of any of Subcontractor's Personnel or of any third party to whom Subcontractor sub-subcontracts all or part of the Work.

Subcontractor shall ensure that its sub-subcontractors of every tier are also obligated to defend Contractor, Owner and any other persons that Contractor is required to defend or assume liability for under the Contract Documents, to the same extent that Contractor is required to defend or assume liability for such persons.

**18. Insurance.** Subcontractor shall procure and maintain the insurance coverage required by the Contract Documents and as set forth in Exhibit F. Subcontractor's insurance must be in effect before Subcontract Work commences and must remain in effect through the longer of the warranty period expressed in the Contract Documents or the time period provided in Exhibit F. Subcontract Work may not begin nor will any payment be due to Subcontractor until Subcontractor has secured such insurance and delivered to Contractor a certificate of insurance fulfilling the requirement(s) expressed in the Contract Documents. Failure to secure and maintain the insurance identified in this Subcontract (and related Exhibits) or provide notices herein will be a material breach of this Subcontract. Any delays or related effects associated with failure to deliver the required documentation will be borne solely by Subcontractor.

To the fullest extent permitted by law, Subcontractor, for itself and on behalf of its insurers waives all rights of subrogation against Owner and Contractor, their agents and employees, as respects loss, damage, claims, suits or demands howsoever caused: (a) to real or personal property, vehicles, equipment and tools owned, leased or used by Subcontractor or Subcontractor's employees, agents, sub-subcontractors, materialmen and suppliers; and (b) to the extent such loss, damage, claims, suits or demands are, or should be, afforded coverage by the Subcontractor's insurance maintained as required by this Subcontract or any other insurance (except professional liability to which this requirement does not apply) maintained by Subcontractor. This waiver shall apply to all first party property, equipment, vehicle and worker's compensation claims, and to all third party liability claims. This waiver shall apply to all deductibles, retentions or self-insured layers applicable to the required or any other insurance maintained by Subcontractor. If necessary, Subcontractor agrees to endorse the required insurance policies to permit waivers of subrogation in favor of Contractor and Owner. Subcontractor further agrees to hold harmless and indemnify Contractor and Owner for any loss or expense incurred as a result of Subcontractor's failure to obtain such waivers of subrogation.

Material suppliers and equipment suppliers contracted by Subcontractor, if delivering to jobsite, must adhere to the insurance requirements herein.

Without any obligation to do so, should Contractor become aware of Subcontractor's failure to procure or maintain the insurance required by this Subcontract, Contractor may obtain such insurance on Subcontractor's behalf and deduct from payment(s) otherwise due and owing those amounts expended in obtaining the required insurance policies.

Exhibit B - Terms and Conditions of Subcontract Agreement

**19. Termination for Convenience.** Contractor may terminate this Subcontract at any time for its convenience and without cause by providing written notice to Subcontractor. Within three (3) days of notification of termination, this Subcontract shall be terminated and Subcontractor shall immediately stop Subcontract Work, follow all of Contractor's instructions and mitigate all costs. In the event of a termination for convenience Contractor's liability to Subcontractor shall be limited to the extent of Subcontractor's proven costs for Work performed on-site and accepted by Owner. Subcontractor shall not be entitled to overhead or profit on Work not executed.

**20. Termination for Cause.** If at any time Subcontractor: (a) fails or refuses to supply sufficient labor, materials, tools, equipment or supervision; (b) fails or refuses to perform the Work promptly and diligently; (c) fails to meet the Work Schedule; (d) causes delay, disruption, interference or stops the work of Contractor or any other contractors; (e) fails or refuses to perform any of its obligations under this Subcontract; (f) commits an act or omission that is a breach or default of this Subcontract; or (g) becomes bankrupt, insolvent, or goes into liquidation (either voluntarily or under an order of a court of competent jurisdiction), or makes a general assignment for the benefit of creditors, or otherwise evidences financial incapacity; then in any of such events, each of which shall constitute a material default under this Subcontract, Contractor shall have the right, in addition to all other rights and remedies provided under this Subcontract or by law, after three (3) days' written notice to Subcontractor: (1) to order Subcontractor to add manpower or to work overtime or additional shifts at no additional cost to Contractor or Owner; (2) to delay payment of all or part of the Subcontract Amount until Subcontractor conforms to the Work Schedule; (3) to take over and perform through Contractor, or through third parties selected by Contractor, the Work until, in Contractor's judgment, Subcontractor's default has been cured, and deduct from the Subcontract Amount the cost thereof plus a management fee of twenty percent (20%), which is a fair reimbursement of Contractor's resources to manage Subcontractor's obligations and not a liquidated damage; (4) to augment Subcontractor's forces with additional labor, service and materials until, in Contractor's judgment, Subcontractor's default has been cured and deduct from the Subcontract Amount the cost thereof plus a management fee of twenty percent (20%); and/or (5) to terminate all or any portion of Subcontractor's right to proceed under the Subcontract and to enter upon the premises and take possession, for the purpose of completing that portion of the Work affected by such termination, of all Subcontractor's records, drawings, documents, materials, tools and equipment and all other items relating to that subject portion of the Work, including materials stored off-site for use in completing the Work. In case of such termination of Subcontractor, Subcontractor shall not be entitled to receive any further payment under this Subcontract with respect to such portion of the Work until that portion of the Work shall be wholly completed to the satisfaction of Contractor and Owner, and shall have been accepted by them, at which time, if the unpaid balance of the amount to be paid under this Subcontract shall exceed the cost and expense incurred by Contractor in completing said portion of the Work, such excess shall be paid by Contractor to Subcontractor as set forth below; but if such cost and expense shall exceed such unpaid balance, then Subcontractor shall pay the difference to Contractor as set forth below. Such cost and expense shall include not only the cost of completing said portion of the subject portion of the Work to the satisfaction of Contractor and Owner, and of performing and furnishing all labor, services, materials, equipment, and other items required therefore, but also all losses, damages, costs and expenses, including reasonable attorneys' fees and disbursements sustained, incurred or suffered by reason of or resulting from Subcontractor's default. If the unpaid balance of the Subcontract Amount exceeds the cost incurred by Contractor, plus a management fee of twenty percent (20%), and no claims arising from the Work are threatened or pending, Subcontractor will be paid the excess less any amounts Subcontractor owes Contractor for any other project, conditioned upon Contractor's receipt of such payment from Owner; but if such cost plus the 20% management fee exceeds the unpaid balance, then Subcontractor shall pay the difference to Contractor within ten (10) days of written demand by Contractor.

In addition to the costs specified in the immediately preceding paragraph, Contractor may deduct from the Subcontract Amount and/or otherwise recover from Subcontractor an amount sufficient to indemnify and hold Contractor harmless from any loss or liability arising out of the Work or other involvement in the Project, including, but not limited to, the costs of any claims by others resulting from Subcontractor's acts or omissions including any judgment or award to or settlement with the claiming party and reasonable attorneys' fees and disbursements incurred defending or resolving such claims.

Exhibit B - Terms and Conditions of Subcontract Agreement

In the event it is determined that Contractor wrongfully terminated Subcontractor for cause, then the termination shall be treated as a termination for convenience and Subcontractor's remedy shall be as described in paragraph 19 of this Subcontract.

**21. Labor Relations; Prevailing Wage.** Subcontractor agrees to be bound by and comply with all applicable federal, state and local laws and regulations bearing on labor or employment such as the payment of prevailing wage, including but not limited to all provisions of the Fair Labor Standards Act, the Americans with Disabilities Act, the federal Family and Medical Leave Act, and the Affordable Care Act. Subcontractor shall indemnify, defend and hold Contractor harmless from and against, all claims, suits, losses, causes of action, damages, liabilities, taxes, fines, penalties and expenses, including attorneys' fees, arising from or related to Subcontractor's failure to comply with applicable law.

Subcontractor agrees to be bound by and comply with all the terms and conditions of the labor agreements listed in the Prime Contractor identified as an Exhibit of this Subcontract to the same degree and extent as if Subcontractor were a party to those agreements, including payments into the employee benefit trust funds required by the labor agreements, and including Subcontractor's submission to, and Subcontractor's compliance with, the arbitration and other dispute resolution requirements of the labor agreements. Subcontractor agrees to comply with the terms and provisions contained in such agreements for resolution of jurisdictional disputes. In the absence of any such procedure, or if such procedure fails to promptly resolve any jurisdictional dispute, Subcontractor agrees, at its own cost and expense, upon request of Contractor, to take any and all lawful steps to secure a binding and final determination of said jurisdictional dispute by the National Labor Relations Board.

Subcontractor acknowledges that terms and conditions of any labor agreements listed in the Prime Contract or any Exhibit of this Subcontract may require that Subcontractor comply with additional labor agreements with unions affiliated with the American Federation of Labor and Congress of Industrial Organizations (AFL-CIO) but not listed in the Prime Contact or any Exhibit. If the terms and conditions of the listed labor agreements so require, Subcontractor shall perform the Work pursuant to all terms and conditions of the labor agreement with a union affiliated with the AFL-CIO.

Subcontractor accepts the duty to maintain harmony between labor groups. In the event of a strike, stoppage or other disruption of any work at the Project resulting from a dispute involving or affecting the labor employed by Subcontractor or its sub-subcontractors, Contractor may immediately terminate this Subcontract. Where Contractor terminates Subcontractor under this provision, Contractor shall compensate Subcontractor for the value of the labor and material theretofore furnished or delivered to the Site proportioned upon the Subcontract amount, but Subcontractor will not be paid and shall not be entitled to incidental or consequential damages, compensation for prospective profits on portions of the project not performed or any costs associated with materials not furnished to the Site.

**22. Disadvantaged, Minority, Women, Disabled Veteran, Business Enterprises.** Subcontractor hereby acknowledges that it is familiar with all DBE/MBE/WBE/DVBE requirements pertaining to the Project. If Subcontractor claims status as a DBE/MBE/WBE/DVBE Subcontractor shall take all steps necessary and shall make all necessary records available to Contractor and Owner to assure that Subcontractor is in compliance with such requirements. In the event that any sub-subcontractor or supplier of Subcontractor is designated as or is required to be a DBE/MBE/WBE/DVBE, Subcontractor agrees to be responsible for insuring that said sub-subcontractor or supplier meets all applicable requirements. Subcontractor acknowledges that Contractor is relying upon Subcontractor's representations regarding the validity of Subcontractor's status, if any, as a DBE/MBE/WBE/DVBE and that misrepresentation of the status of Subcontractor or any of its sub-subcontractor or material suppliers is a material breach and grounds for immediate termination of this Subcontract. Subcontractor shall save, hold harmless, indemnify and defend Contractor from any and all loss, liability, claims, demands, suits at law or in equity, judgments (including attorneys' fees and court costs) and awards, arising out of or related to Subcontractor's not having or losing the DBE/MBE/WBE/DVBE status it represented it possessed.

**23. Contractor's Equipment.** In consideration of Contractor leasing or expressly or impliedly granting the use, from time to time, to Subcontractor of certain construction equipment (including, but not limited to, scaffolds, ladders and planks,

14/24

## Exhibit B - Terms and Conditions of Subcontract Agreement

hereinafter referred to as "Leased Equipment") to be used in connection with and on this job (notwithstanding the fact that such equipment may or may not be so furnished to Subcontractor with an operator paid by Contractor, and further, notwithstanding the fact such Leased Equipment from time to time may or may not be owned, but rather, leased by Contractor);

(A) Subcontractor agrees to save, hold harmless, and indemnify Contractor from and against any and all loss, liability, claims, demands, suits at law or in equity, and judgments (including attorney's fees and court costs) and awards, regardless of their respective merits, on account of any loss or damage to the person or property which may fall upon or be alleged against Contractor and which may have been caused in whole or in part or in connection with the leasing or use of the Leased Equipment on this job by Subcontractor or its agents, notwithstanding said claim or injury occurred because of a latent or patent defect in said Leased Equipment.

(B) Contractor makes no warranties, express or implied with respect to the Leased Equipment, nor has it made an inspection of the Leased Equipment.

(C) Subcontractor hereby assumes all damage, loss, liability or injury, or the risk thereof, to the property and equipment of the Contractor from all causes whatsoever in connection with operation of the Leased Equipment.

(D) Subcontractor agrees to maintain and carry, at its sole cost, insurance for Contractor's Equipment as provided in the Contract Documents and as necessary to provide adequate liability, physical damage, public liability, property damage and casualty insurance for the full replacement cost of the Leased Equipment and other liabilities which are Subcontractor's responsibility when using Leased Equipment.

**24. Patents and Royalties.** Subcontractor shall pay all royalties and patent license fees applicable to Subcontractor's Work. Subcontractor agrees to indemnify and hold harmless Owner and Contractor from and against any and all loss, liability, damages and expenses (including cost of defense, settlement and legal fees and disbursements) arising out of claims or litigation on account of infringement or alleged infringement of any letters patent or patent rights by reason of the Work or any product used by Subcontractor.

**25. Independent Contractor.** Subcontractor is an independent contractor of Contractor. Nothing contained in this Agreement shall be construed to create the relationship of employer and employee, principal and agent, partnership or joint venture, or any other fiduciary relationship. Subcontractor has no authority to bind Contractor or create obligations on the part of Contractor. Subcontractor shall, at its sole cost and expense, and without increase in the Subcontract Amount, comply with all laws, rules, ordinances and regulations of all governing bodies having jurisdiction over the Work; obtain all necessary permits and licenses therefor; pay all manufacturers' taxes, sales taxes, use taxes, processing taxes, and all federal and state taxes, insurance and contributions for social security and unemployment.

**26. Claims and Dispute Resolution.** If Subcontractor becomes aware of an act or omission of Contractor which would give rise to a breach of contract action or other claim for monetary damages from Contractor or Owner, Subcontractor shall, in addition to the procedures outlined in paragraph 10, notify Contractor within three (3) days after first becoming aware of such act or omission and in any event in sufficient time to allow Contractor to give notice to the Owner under the Contract Documents. Failure to give the notice required hereunder shall be deemed a waiver of the right to recover.

In case of any dispute between Contractor and Subcontractor, in any way related to or arising from any act or omission of the Owner or involving the Contract Documents, Subcontractor agrees to be bound to Contractor to the same extent that Contractor is bound to Owner, by the terms of the Contract Documents, including, if applicable, waiver of the right to pursue a claim in a Court of competent jurisdiction in favor of alternative dispute resolution up to and including binding arbitration in lieu of litigation as described, and by any and all preliminary and final decisions or determinations made thereunder by the party, board or court so authorized in the Contract Documents or by law, whether or not Subcontractor is a party to such proceedings. In case of such dispute, Subcontractor will comply with all provisions of the Contract Documents allowing Contractor a reasonable time to analyze Subcontractor's claim and forward to Owner any required communications or documentation. Contractor will, at its option (1) present to the Owner, in Contractor's name, or (2) authorize Subcontractor to present to the Owner, in Contractor's name, all of Subcontractor's claims and answer Owner's claims involving Subcontractor's Work, whenever Contractor is permitted to do so by the terms of the Contract

**Exhibit B - Terms and Conditions of Subcontract Agreement**

Documents. Contractor will further invoke on behalf of Subcontractor, or allow Subcontractor to invoke, those provisions in the Contract Documents for determining disputes. Nothing herein shall require Contractor to certify a claim under a government contract when it cannot do so in good faith. If such dispute is prosecuted or defended by Contractor, Subcontractor, at its own expense, agrees to furnish all documents, statements, witnesses, and other information required by Contractor and to pay or reimburse Contractor for all costs incurred by Contractor in connection with the dispute including attorneys' fees. Subcontractor is bound by the dispute resolution provisions of the Prime Contract and Subcontractor agrees to consolidation and joinder with any dispute involving Owner.

Any other claim, dispute or other matter in question arising out of or related to this Subcontract shall be resolved as follows. Contractor shall have a period of thirty (30) days from submission of the claim documentation within which to evaluate the claim and supporting documentation. Following the conclusion of the evaluation period, Contractor shall inform Subcontractor whether the dispute will either be negotiated or mediated as a condition precedent to further dispute resolution. If neither negotiation nor mediation is a successful means to resolve the dispute, it shall be litigated in a Court, before a Judge, without a Jury. The parties irrevocably waive the right to trial by jury and submit to the jurisdiction of the state and federal courts in the County and Federal Judicial District where the Project is located as jurisdiction for resolution of the disputes hereunder. In all instances of dispute, Subcontractor shall continue performance of all obligations hereunder despite any dispute that may develop and Subcontractor shall pay Contractor's costs and legal fees incurred enforcing or defending this Subcontract.

**27. Taxes.** Subcontractor shall be responsible for all sales tax, withholding taxes upon its agents and employees, FICA, unemployment compensation and any taxes upon the labor and materials furnished pursuant to the Subcontract.

**28. Lawful employees.** Subcontractor warrants that all of its employees and the employees of its sub-subcontractors, suppliers and materialmen are, and throughout the course of the Project will be, lawfully employed under all Federal, State and Local, laws, regulations, rules, orders, codes and ordinances. Subcontractor shall defend (at Subcontractor's expense and with counsel acceptable to Contractor), indemnify and hold harmless the Defended Parties from and against claims, suits, losses, causes of action, damages, liabilities, fines, penalties and expenses, including attorneys' fees, arising out of or resulting from a breach of the foregoing representation and warranty.

**29. Non-discrimination.** Subcontractor shall fulfill the obligations of this Subcontract in a manner free from all forms of discrimination made unlawful or otherwise prohibited by or recommended against by governmental or quasi-governmental authorities having jurisdiction at the Project.

**30. No Waiver.** The failure of Contractor to insist, in any one or more instances, on the performance of any of the obligations required by the other under the Contract Documents shall not be construed as a waiver or relinquishment of such obligation or right with respect to future performance.

**31. Headings.** The headings used in this Subcontract, or any other Contract Document, are for ease of reference only and shall not in any way be construed to limit or alter the meaning of any provision.

**32. Assignment and Subcontracting.** Neither this Subcontract nor any right, privilege or obligation hereunder shall be assigned, sublet, subcontracted or transferred in whole or in part by Subcontractor without prior written consent of Contractor, and any attempted assignment, subletting, subcontracting or transfer thereof without the written consent of Contractor shall be void.

Subcontractor must receive written approval from Contractor prior to subcontracting the Work or any portion thereof. The subcontracting of all or any part of the Work by Subcontractor shall not relieve Subcontractor from any of the obligations or conditions of this Subcontract. The acts and omissions of each sub-subcontractor and all persons either directly or indirectly acting for each sub-subcontractor shall be deemed to be the acts and omissions of Subcontractor, and Subcontractor shall remain liable and responsible to Contractor hereunder as if no subcontract had been made.

**Exhibit B - Terms and Conditions of Subcontract Agreement**

Subcontractor shall bind all sub-subcontractors, materialmen and suppliers to the provisions of the Contract Documents applicable to the subcontracted Work.

**33. Choice of Law.** This Subcontract shall be construed, enforced, and performed in accordance with the laws of the State of Montana, without regard to Montana's principles of conflicts of laws.

**34. Jointly Drafted.** The parties expressly agree that this Subcontract was jointly drafted, and that they both had opportunity to negotiate its terms and to obtain the assistance of counsel in reviewing its terms prior to execution. Therefore, this Subcontract shall be construed neither against nor in favor of either party due to being considered the drafter.

**35. Sub-Subcontract / Lower-Tier Compliance.** Subcontractor agrees to require Subcontractor's Sub-subcontractors and Lower-tier Contractors adhere to all requirements as stated herein.

**36. Owner Defined.** For purposes of this Subcontract the term "Owner" shall mean the Owner of the Project and, if Contractor is a lower tier contractor, "Owner" also refers to the higher tier contractors linking Contractor to the Project.

**37. Counterparts.** This Subcontract may be executed in one or more counterparts each of which is deemed an original and together constitute one document. Contractor and Subcontractor covenant and agree that the signatures executing this Subcontract, provided by facsimile or electronic transmission, shall stand as and for the original, and Subcontractor and Contractor agree to be bound thereby.

**38. Entire Agreement.** This Subcontract reflects the complete and full agreement between the parties and there exist no other agreements or understandings, whether verbal or written. Subcontractor's bid, proposal other exclusionary or limiting language are not part of this Subcontract.

[The rest of this page is intentionally blank.]

**Exhibit C – Form of Subcontractor's Affidavit**

State of _____    ) SS
County of _____   ) SS

TO WHOM IT MAY CONCERN:

The undersigned, being duly sworn, deposes and states that:

1.    [He/She] is the _____ of _____ ("Subcontractor"), the subcontractor retained by Agri Systems d/b/a ASI Industrial ("Contractor") for construction services more fully detailed in a subcontract executed by Contractor and Subcontractor for _____ (the "Project"),

2.    The table attached hereto as <u>Schedule A</u> and incorporated herein by reference constitutes a complete and accurate statement of: (a) the names of all sub-subcontractors, material providers, laborers and other parties who have furnished or will furnish labor, services, material, fixtures, apparatus machinery, forms of form work on account of the Project and all parties having contracts or subcontracts for specific portions of the Project or for material entering into the construction thereof (each a "Subcontractor"); (b) the addresses of all Subcontractors; (c) the original amount due to each Subcontractor pursuant to its subcontract, (d) the revised amount due to each Subcontractor pursuant to its subcontract following any and all approved change orders, (e) the total amount paid to each Subcontractor pursuant to its subcontract through and including the date hereof, and (f) the total amount due or that may become due to each Subcontractor in connection with the Project following the date hereof.

3.    There are no other contracts relating to the Project except as noted above, and there is nothing due or to become due to any person for labor, services, material, fixtures, apparatus machinery, forms of form work or other work of any kind or nature done upon, or in connection with, the Project other than stated in Schedule A.

_____
Printed Name: _____
Title: _____


SUBSCRIBED and SWORN TO before me this _____ day of _____, 201_.


_____
Notary Public

My commission expires: _____

Schedule A to Subcontractor/Supplier Affidavit

| Name of Subcontractor | Addresses of Subcontractor | Original Subcontract Amount | Amended Subcontract Amount | Total Amount Paid to Subcontractor | Balance Due Subcontractor |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

19
24

Exhibit D – Form of partial waiver of lien

### PARTIAL WAIVER

"Subcontractor/Vendor" _____
"Project:" _____
"Owner" _____

This Partial Waiver is made by Subcontractor/Vendor as of the date indicated below, a subcontractor or supplier to Agri Systems d/b/a ASI Industrial ("Contractor"), in connection with construction of improvements for and to the Project.

1.    Subcontractor/Vendor represents that the following are true and accurate statements concerning the price of, and payments received for, the work, labor, services, materials, supplies and/or equipment performed and/or furnished by or on behalf of Subcontractor/Vendor in connection with the Project ("Work"):

| | | |
|---|---|---|
| Date of the current application for payment: | | "Application Date" |
| Total of All Payments Previously Received: | $_____ | |
| Current application for payment: | $_____ | "Requested Payment" |
| Unpaid retainage | $_____ | "Accrued Retainage" |

2.    Subcontractor/Vendor represents that it has received full and final payment for all Work performed or furnished on or before the date of the most recently submitted Partial Waiver (the "Paid-Through Date"), if any, except for Accrued Retainage. Vendor hereby unconditionally waives, releases and forever discharges the Project, Owner, general contractor (if one exists), the Contractor, and their respective owners, parent companies, affiliates, successors, assigns, agents, employees, lenders and sureties (hereinafter "Releasees") of and from all causes of action, suits, debts, accounts, bonds, contracts, promises, damages, liens, encumbrances, judgments, claims and demands whatsoever, in law or equity, known or unknown, accrued or unaccrued, which Subcontractor/Vendor ever had, now has or might hereafter have ( hereinafter "Claims"), that are in any way connected with or related to Work performed or furnished on or before the Paid-Through Date, without waiving Subcontractor's/Vendor's claim for payment of Accrued Retainage.

3.    Subcontractor/Vendor seeks the Requested Payment as an amount due for all Work performed during the period between the Paid-Through Date and Application Date (the "Applicable Payment Period"). Conditioned only on the receipt of the Requested Payment, Vendor hereby waives, releases and forever discharges the Releasees of and from all Claims that are in any way connected with or related to Work performed or furnished before or during the Applicable Payment Period, without waiving Subcontractor's/Vendor's claim for payment of Accrued Retainage.

4.    Vendor represents that it has fully paid all employees, sub-subcontractors, suppliers and others entitled to payment for Work performed or furnished before Paid-Through Date.   To the greatest extent permitted by law, Subcontractor/Vendor agrees to defend, indemnify and hold harmless the Releasees from and against all Claims that are in any way connected with or related to Work performed or furnished by or on behalf of Subcontractor/Vendor.

SUBCONTRACTOR/VENDOR

By: _____
Name: _____
Title: _____
Date: _____

State of:
County of:

SUBSCRIBED and SWORN before me the _____ day of _____ 201_, by
_____, who is personally known to me.

_____
Name:
Notary Public

My commission expires: _____

2.0
24

Exhibit E – Form of final waiver of lien

FINAL WAIVER

"Subcontractor/Vendor:" _____
"Project:" _____
"Owner" _____

This Final Waiver is made by Subcontractor/Vendor as of the date indicated below, a subcontractor or supplier to Agri Systems d/b/a ASI Industrial ("Contractor"), in connection with construction of improvements for and to the Project.

1.    Subcontractor/Vendor represents that the following are true and accurate statements concerning the price of, and payments received for, the work, labor, services, materials, supplies and/or equipment performed and/or furnished by or on behalf of Subcontractor/Vendor in connection with the Project ("Work"):

Date of the current application for payment: _____    "Application Date"
Total of All Payments Previously Received: $_____
Current application for payment: $_____    "Requested Payment"

2.    Subcontractor/Vendor represents that it has received full and final payment for all Work performed or furnished except for Requested Payment. Vendor hereby unconditionally waives, releases and forever discharges the Project, Owner, general contractor (if one exists), the Contractor, and their respective owners, parent companies, affiliates, successors, assigns, agents, employees, lenders and sureties (hereinafter "Releasees") of and from all causes of action, suits, debts, accounts, bonds, contracts, promises, damages, liens, encumbrances, judgments, claims and demands whatsoever, in law or equity, known or unknown, accrued or unaccrued, which Subcontractor/Vendor ever had, now has or might hereafter have ("Claims"), that are in any way connected with or related to the Project, without waiving Subcontractor's/Vendor's claim for the Requested Payment.

3.    Subcontractor/Vendor seeks the Requested Payment as all amount due for all Work performed for the Project. Conditioned only on the receipt of the Requested Payment, Subcontractor/Vendor hereby waives, releases and forever discharges the Releasees of and from all Claims that are in any way connected with or related to the Project.

4.    Subcontractor/Vendor represents that it has fully paid all employees, sub-subcontractors, suppliers and others entitled to payment for Work performed or furnished for or to the Project. To the greatest extent permitted by law, Subcontractor/Vendor agrees to defend, indemnify and hold harmless the Releasees from and against all Claims that are in any way connected with or related to Work performed or furnished by or on behalf of Subcontractor/Vendor.

SUBCONTRACTOR/VENDOR

By: _____
Name: _____
Title: _____
Date: _____

State of:
County of:

SUBSCRIBED and SWORN before me the _____ day of _____ 201__, by
_____, who is personally known to me.

_____
Name:
Notary Public

My commission expires: _____

21/24

## Exhibit F - Insurance Requirements

1.      **General Requirements.** Subcontractor shall, at its sole expense, maintain in effect at all times, as required under the Contract Documents, insurance coverage with limits not less than those required by the Contract Documents so as to protect the Project's owner, Contractor, and their respective employees, agents and invitees, from claims of any kind which may arise out of or result from Subcontractor's performance of the Work, whether performed individually or collectively by Subcontractor, any subcontractor or supplier of any tier, or by anyone directly or indirectly employed by any of them or by anyone for whose acts any of them may be liable. The stated limits of insurance required by this Exhibit are minimums only and it shall be the Subcontractor's exclusive responsibility to determine what additional limits are adequate, and the length of time the coverage shall be maintained, to fully meet its obligations under this Subcontract. The minimum limits may be basic policy limits or any combination of basic limits and umbrella limits. Subcontractor shall pay all deductibles and self-insured retention amounts associated with the required insurance. The amount of self-insured retention for the insurance coverage required by the Contract Documents may not exceed $5,000. Prior to starting work, Subcontractor shall require his insurance carrier or agent to complete and return to Contractor a Certificate of Insurance, in a form satisfactory to Contractor, evidencing the required insurance coverages for subcontractors.

2.      **Standards.** Insurance coverage shall be procured from reputable insurers licensed to do business in the State in which the Project is located, and such insurers shall maintain a current A.M. Best rating of at least "A," a Financial Size Category of a "VII" or better, and being Treasury rated at a level satisfactory to Contractor. All insurance policies shall be of an "Occurrence" type except the Contractor's Pollution Liability insurance coverage. "Claims Made" type policies shall not be permitted.

3.      **Certificates of Insurance.** Subcontractor shall furnish to Contractor evidence of the insurance coverage required to be maintained by the Subcontractor and its subcontractors hereunder, including Certificates of Insurance issued by the insurance carrier, prior to Subcontractor commencing performance of the Work. The Certificates of Insurance shall state that Contractor will be notified in writing thirty (30) days prior to a cancellation, material change, or non-renewal of insurance.

4.      **Minimum Limits.**

| Type of Insurance | Minimum Limit |
| --- | --- |
| Worker's Compensation Insurance | Statutorily Required Limits |
| General Liability Insurance | $1,000,000 per occurrence; $2,000,000 aggregate |
| Comprehensive Automobile Liability Insurance | $1,000,000 any one accident/any one occurrence |
| Umbrella Liability Insurance | $2,000,000 per single occurrence; $4,000,000 aggregate |

Professional Errors and Omissions Liability:
$ 2,000,000 each Occurrence (there shall be no exclusions for
design-build project delivery

5.      **Policy Specifications**
        a.      **Worker's Compensation Policy.** Worker's Compensation Insurance Policy shall cover: worker's compensation, disability benefit and other similar employee benefit acts applicable to the Work; the Umbrella Liability shall attach to Part Two of the Worker's Compensation Insurance; add NCCI form WC 00 003 13 or equivalent for subrogation waiver; Information Page Part 3A shall identify Project's state and Part 3C shall provide "All U.S. states and territories except North Dakota, Ohio, Washington, Wyoming, Puerto Rico, and the U.S. Virgin Islands and any state identified in Part 3A"; add endorsement for stop gap employers liability NCCI form WC 34 13 01 or its equivalent if Project is in Ohio or NCCI form WC 00 03 03C or its equivalent if Project is in North Dakota, Washington or Wyoming.
        b.      **General Liability Policy.** General Liability Insurance Policy shall be on an unmodified ISO form CG 00 01 10 01 (or a substitute form providing equivalent coverage) covering: claims for damages because of bodily injury, sickness or disease, death of any person other than Subcontractor's employees; claims for damages insured by usual personal injury liability coverage which are sustained (1) by a person as result of an offense directly or indirectly related to employment of such person by Subcontractor, or (2) by another person; claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom; claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle; and claims involving contractual liability insurance application to the Subcontractor's obligation under this Subcontract i.e., Subcontractor agrees to indemnify and Hold

22
24

Harmless leaseholder and landowner from any and all claims arising out of Subcontractor's operations under this Subcontract. The amount of deductible and self-insured retention amounts per occurrence under the General Liability policy coverage shall not exceed $5,000 per occurrence.  The General Liability insurance shall not include a deductible or self-insured retention amount imposed on a per claim basis.  The General Liability policy listed on the certificate to be supplied to Contractor, as this policy relates to the Work, shall not contain restrictive clauses which would limit the insurance based on the Work performed. Broad Form Contractual Liability Insurance, Completed Operations Liability Insurance, Independent Contractors Coverage, and Broad Form Property Damage (including Completed Operations) coverage shall be provided under the General Liability policy for subcontractors. The policy shall include the following as part of any exclusion for "your work": "This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf or by a subcontractor". The policy shall include the following unmodified ISO form endorsements or their equivalents: CG 20 01 04 13 Primary and Noncontributory Endorsement; and CG 22 79 07 98 and CG 22 80 07 98 Contractor's Professional Liability.  The policy shall not include any of the following ISO form endorsements or their equivalents: CG 21 43 Professional Liability; CG 21 39 Contractual Liability Limitation; CG 24 26 Amendment of Insured Contract Definition; and/or any over action or "third-party over action" exclusion.

      c,     Automobile Policy.  Comprehensive Automobile Liability Policy shall include coverage for liability arising out of owned, non-owned, and hired autos.

      d,     Umbrella Liability. Umbrella Liability Insurance Policy shall include the following as part of any exclusion for "your work" under the umbrella policy: "This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf or by a subcontractor".

**6.**     Subcontractor Tools and Equipment.  Subcontractor shall purchase such insurance as may be required for the protection of his own tools and construction equipment as he may desire.  Contractor does not assume any liability for temporary tools and equipment of others.

**7.**     Additional Insured.  Subcontractor shall provide Contractor with an Additional Insured Endorsement on ISO form CG20 10 11 85 or on the combination of ISO Forms CG 20 10 07 04 and CG 20 37 07 04 naming Contractor, Owner and any other parties contractor is required to provide additional insured status to in the contract between owner and contractor as Additional Insureds thereunder on a primary basis with Contractor's, Owners, and other parties own liability coverage to be excess and non-contributory as respects additional insured coverage provided by Subcontractor. The endorsement shall require the insurance company to give a minimum of 30 days' prior written notice to the Additional Insureds should any of Subcontractor's insurance policies be cancelled or renewal refused. Subcontractor shall provide proof that all Additional Insured Endorsement(s) are in effect as a condition precedent to receiving final payment under the Subcontract.

Exhibit G – Form of Change Order

"Project":          [Name]

"Contractor":       [Name]

"Subcontractor":    [Name]
                    [Address]

Effective Date:     _____, 20___

Change Order No.: _____

## AGREEMENT FOR CHANGE ORDER NO. _____

This Change Order is entered into by and between Contractor and Subcontractor as of the Effective Date and hereby changes the terms of the subcontract entered into by and between Contractor and Subcontractor for the Project (the "Subcontract") as follows:

[DESCRIPTION OF CHANGE]

for which the Subcontract Amount is (increased / decreased) by: $

and for which the Work Schedule is (increased / decreased) by: _____days.

1.   Except as otherwise expressly provided herein, Subcontractor agrees to perform the work described above in accordance with all of the terms and conditions of the Subcontract.

2.   Subcontractor's payment applications or invoices must show any charges for the work in this Change Order separately and identified by the Change Order number.

3.   This Change Order represents the final adjustment for any and all amounts due or to become due to Subcontractor for the changes or work referred to herein. Subcontractor further releases all other claims, if any except those claims previously submitted in writing in strict accordance with the Subcontract) for additional compensation under the Subcontract, including without limitation any rights Subcontractor may have for additional compensation arising out of delays or disruption of Subcontractor's Work Schedule as may have arisen prior to the date of this Change Order.

4.   All other terms of the Subcontract remain in full force and effect and are not modified or abrogated by this Change Order.

**SEEN AND AGREED TO BY:**

| CONTRACTOR | CONTRACTOR SIGNATURE | TITLE | DATE |
|---|---|---|---|
| _____ | _____ | _____ | _____ |

| SUBCONTRACTOR | SUBCONTRACTOR SIGNATURE | TITLE | DATE |
|---|---|---|---|
| _____ | _____ | _____ | _____ |

24/24

## Robert Hamlin

| | |
|---|---|
| **From:** | Robert Hamlin |
| **Sent:** | Monday, June 25, 2018 12:06 PM |
| **To:** | 'Dan Harger' |
| **Cc:** | Matt Hamlin; Dan Barnhart; Steve Bjordahl; Kirk Meyer; Jolene Johnson; Nelson Miller; Tim Small; Emilee Burch (eburch@asi-industrial.com) |
| **Subject:** | final version |
| **Attachments:** | asi@asi-industrial.com_20180625_115854.pdf |

Dan;

Here is the agreed version of the Eaton Subcontract.

Note that this is the latest date (6-25-18) therefore is the governing subcontract.

All other signed copies are null and void.

Again, we look forward to a successful project.

Bob


Robert Hamlin
ASI-Industrial
1300 Minnesota Ave.
Billings, MT 59101
Ofc: (406) 245-6231
Fax: (406) 245-6236
Cell: (406) 670-9879

www.asi-industrial.com
rhamlin@asi-industrial.com