IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-02238-CMA-STV

AGRI-SYSTEMS, *a Montana corporation, d/b/a ASI Industrial*,

    Plaintiff/Counter-Defendant,

v.

STRUCTURAL TECHNOLOGIES, LLC, *a Maryland limited liability company*,

    Defendant/Counter-Plaintiff.

---

# ORDER

---

    This matter is before the Court on several motions:

    First, on April 18, 2025, Defendant/Counter-Plaintiff Structural Technologies, LLC ("Structural") filed a Motion for Reconsideration of Motions *In Limine*. (Doc. # 158.) Within that Motion, Structural requests that this Court also reconsider its Order Denying Structural's Motion for Summary Judgment (Doc. # 131) in the event it reverses its rulings on Structural's Motions *In Limine* (Doc. # 124). *See* (Doc. # 158 at 1, 12−13). Structural's Motion for Reconsideration of Motions *In Limine* has been fully briefed (Docs. ## 158, 168, 170) and, for the reasons set forth herein, is denied.

    Second, on the motion *in limine* deadline, April 18, 2025, Plaintiff/Counter-Defendant Agri-Systems, d/b/a ASI Industrial's ("ASI") filed its Motion *In Limine* to Exclude Two Expert Reports and Testimony of Gerard K. Lynskey, P.E. (Doc. # 159). In response, Structural filed a Motion for Leave to file an untimely response brief and a

Motion to Strike ASI's Motion *In Limine* regarding Gerard K. Lynskey's first expert report as untimely. (Doc. # 165, Exs. A & B.) ASI filed a response in opposition to Structural's Motion for Leave and Structural, in turn, filed a reply. (Docs. ## 166, 167.) The Court grants in part Structural's Motion for Leave (Doc. # 165) and accepts its untimely and non-compliant response to ASI's Motion *In Limine* (*Id.*, Ex. A). For the reasons set forth herein, the Court denies ASI's Motion *In Limine* to Exclude Two Expert Reports and Testimony of Gerard K. Lynskey, P.E. (Doc. # 159) and also denies Structural's Motion to Strike ASI's Motion *In Limine* (Doc. # 165, Ex. B) as moot. Thus, Gerard K. Lynskey's two expert reports will be admitted and he will be allowed to testify.

Third, on the motion *in limine* deadline, April 18, 2025, Structural filed its fourth Motion *In Limine* to Exclude Expert Testimony from Kirk Meyer or to Disqualify Kirk Meyer as an Expert Witness. (Doc. # 160.) ASI's response argues that Structural's Motion exceeds the eight-page limit in the Court's Trial Standing Order. (Doc. # 164.) In its later-filed Motion for Leave (Doc. # 165), Structural requests that the Court post-facto grant it leave to file its non-compliant Motion *In Limine* or, in the alternative, allow it to file a compliant eight-page motion *in limine*. *See* (Doc. # 165 at 1−3, 5). The non-compliance issue has been fully briefed. *See* (Docs. ## 165, 166, 167). For the reasons set forth herein, Structural's Motion for Leave (Doc. # 165) is denied to the extent that the Court does not accept Structural's non-compliant Motion *In Limine* nor will it allow Structural to file a compliant motion *in limine*. Structural's non-compliant Motion *In Limine* to Exclude Expert Testimony From Kirk Meyer or to Disqualify Kirk Meyer as an Expert Witness (Doc. # 160) is stricken. Thus, Kirk Meyer will be allowed to testify.

## I.     BACKGROUND

The Court provided a detailed background of this case in its Order Denying Defendant's Motion for Summary Judgment and incorporates it herein by reference. *See* (Doc. # 131 at 1−7). Prior to its decision on summary judgment, the Court denied Structural's Motions *In Limine* to Disqualify and Exclude Testimony From ASI's Experts Matthew Hamlin, Steven Bjordahl, and Matthew Blackmer. *See* (Docs. ## 92−94, 124). Structural's current Motion asks the Court to reconsider these prior rulings based on changes to Fed. R. Evid. 702 that occurred more than a year-and-a-half ago, on December 1, 2023. Specifically, the Committee's added language regarding the preponderance of the evidence standard and the requirement that the expert's opinion reflect a reliable application of the principles and methods to the facts of the case. *See* (Doc. # 158).

## II.     LEGAL STANDARDS

**A.    Motion for Reconsideration Under Federal Rules of Civil Procedure**

Although the Federal Rules of Civil Procedure do not directly provide for a motion to reconsider an interlocutory ruling, district courts have broad discretion to reconsider their interlocutory rulings before the entry of judgment. *Mantooth v. Bavaria Inn Rest., Inc.*, 360 F. Supp. 3d 1164, 1168−69 (D. Colo. 2019) (citing *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) ("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders."); Fed. R. Civ. P. 54(b) ("[A]ny order . . . that

3

adjudicates fewer than all the claim or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment . . . .")).

"Notwithstanding the district court's broad discretion to alter its interlocutory orders, the motion to reconsider 'is not at the disposal of parties who want to rehash old arguments.'" *Id.* at 1169 (quoting *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000)). Rather, as a practical matter, to succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Id.* (quoting *Nat'l Bus.*, 115 F. Supp. 2d at 1256). Even under this lower standard, "[a] motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence." *Id.* (quoting *Nat'l Bus.*, 115 F. Supp. 2d at 1256; citing *Sanchez v. Hartley*, No. 13-cv-1945-WJM-CBS, 2014 WL 4852251, at *2 (D. Colo. Sept. 30, 2014) (refusing to reconsider an interlocutory order where the defendants did not show "an intervening change in the law, newly discovered evidence, or the need to correct clear error or manifest injustice")).

The Court may be guided by Rules 59 and 60 standards in deciding whether to alter or vacate an interlocutory order. *Id.* (citing *Perkins v. Fed. Fruit & Produce Co., Inc.*, 945 F. Supp. 2d 1225, 1232 (D. Colo. 2013)). Generally, a court will reconsider an interlocutory ruling on a showing of "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir.

2000) (citation omitted). A motion for reconsideration is not a vehicle for a losing party to revisit issues already addressed. *See id.*

**B.      Federal Rule of Evidence 702**

Fed. R. Evid. 702 was amended effective December 1, 2023 to read as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if **the proponent demonstrates to the court that it is more likely than not that**:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the **expert's opinion reflects a reliable application of** the principles and methods to the facts of the case.

(new language underlined and in bold).

### III.    DISCUSSION

**A.      Denying Structural's Motion for Reconsideration of Motions *In Limine* and Summary Judgment Orders (Doc. # 158)**

Structural requests that the Court reconsider, based on the December 1, 2023 amendments to FRE 702, its denial of Structural's Motions *In Limine* to exclude the expert reports and/or expert testimony of ASI's expert witnesses, Steve Bjordahl, Matthew Hamlin, and Matthew Blackmer. *See* (Doc. # 158). ASI correctly points out that Structural's motion merely rehashes the substance of its previous arguments related to the expert witnesses' alleged lack of qualifications, bias, and unreliability of the methods and principles applied to the facts of this case. *See* (Doc. # 168).

5

Although the bolded and underlined language set forth in Section II.B. above was added to Federal Rule of Evidence 702 in December 2023, the preponderance of the evidence standard is not something new. In fact, the Court acknowledged this standard in its prior ruling: "Before the expert can offer such opinions, however, the proponent of the testimony must demonstrate, by a preponderance of the evidence, that the expert's testimony is admissible." (Doc. # 124 at 3−4) (citing *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009); *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220–21 (D. Colo. 2008)). Further, while the language in FRE 702(d) may have been reworded, the principle remains the same. *See* Fed. R. Evid. 702(d) (prior language read: "the expert has reliably applied the principles and methods to the facts of the case"). "Ultimately, the test requires that the expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Basanti v. Metcalf*, 35 F. Supp. 3d 1337, 1342 (D. Colo. 2014) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Moreover, this Court previously identified its role as "gatekeeper," which applied even before the December 2023 amendments to FRE 702. (Doc. # 124 at 4) ("The trial court acts as a 'gatekeeper,' reviewing the proffered opinions for both relevance and reliability before determining whether the evidence is admissible under Rule 702.") (citing *Kumho Tire*, 526 U.S. at 147; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–95 (1993); *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000)). "The overarching purpose of the court's inquiry is 'to make certain that the expert . . . employs in the courtroom the same level of intellectual rigor that

6

characterizes the practice of an expert in the relevant field.'" (*Id.*) (citing *Goebel*, 346 F.3d 987, 992 (10th Cir. 2003) (quoting *Kumho Tire*, 526 U.S. at 152)).

As courts in this district and circuit have repeatedly recognized, consideration of the "gatekeeper" role is subject to a different analysis where, like here, the Court is serving as the ultimate factfinder. "[T]he usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial." *AG of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009). Nothing in the amendments to FRE 702 changed the principle that a court's gatekeeping role is different when the trial is to the bench rather than to the jury.

Generally, "rejection of expert testimony is the exception rather than the rule." *United States v. Nacchio*, 519 F.3d 1140, 1154 (10th Cir. 2008), *vacated in part on rehearing en banc*, 555 F.3d 1234 (10th Cir. 2009). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

In its previous Order, the Court engaged in a detailed analysis as to why each of the challenged ASI expert witnesses are qualified and why their principles and methods, as applied to the facts of this case, are sufficiently reliable to warrant admission of their reports and testimony. *See* (Doc. # 124 at 5−30). The Court also addressed, in detail, the alleged biases of Mr. Bjordahl and Mr. Hamlin due to their employment with ASI. *See* (*id.* at 6−9, 18−19). As the Court already indicated, it will apply the appropriate

7

weight to each witness's testimony if it becomes clear at trial that the witness is biased or if his opinions are unreliable. *See* (Doc. # 124 at 19−22, 24, 27).

Structural has not demonstrated any of the three elements warranting reconsideration of the Court's interlocutory rulings—(1) that intervening changes to FRE 702 on December 1, 2023, warrant a reversal of the Court's prior decisions; (2) that there is new evidence previously unavailable; and (3) that there was clear error or that a reconsideration of the Court's prior rulings would prevent manifest injustice. Thus, the Court declines to reverse its prior ruling denying Structural's Motions *In Limine* attempting to exclude the reports and/or testimony of ASI's expert witnesses, Steve Bjordahl, Matthew Hamlin, and Matthew Blackmer (Doc. # 124).

Further, independent of ASI's expert witness testimony, the Court's Order Denying Structural's Motion for Summary Judgment found genuine disputes of material fact precluding the granting of summary judgment, including basic conclusions related to the contract and what "design" meant. *See* (Doc. # 131 at 11−12). The Court therefore denies Structural's Motion for Reconsideration (Doc. # 158) in its entirety.

**B.     Denying ASI's Motion *In Limine* to Exclude Gerard K. Lynskey (Doc. # 159)**

    1.     <u>Granting Structural's Motion for Leave (Doc. # 165) in part accepting its untimely and non-compliant response to ASI's motion *in limine*</u>

First, the Court grants Structural's Motion for Leave (Doc. # 165) in part and accepts its untimely and non-compliant response to ASI's Motion *In Limine* to exclude Gerard K. Lynskey's reports and testimony. (*Id.*, Ex. A.) Despite Structural's arguments to the contrary, the Local Rules do not trump this Court's explicit orders as they pertain to filing deadlines and page limits. This Court's Standing Order on Civil Trial Procedures

applies. Therefore, Structural's response to ASI's motion *in limine* was due within 14 days and was limited to eight pages, unless there is a showing of **substantial** good cause and the Court grants leave to file the excess pages. *See* CMA Civ. Trial Standing Order 43.1B(1)(g).

Structural filed its 15-page response to ASI's Motion 18 days after it was filed by ASI. The response was both untimely and non-compliant with the Court's Standing Order on Civil Trial Procedures. Nonetheless, the Court finds substantial good cause to accept Structural's untimely and non-compliant response. Whereas ASI has multiple expert witnesses who will testify in this case, Gerard K. Lynskey appears to be Structural's only testifying expert in this case. Given the fact that all of ASI's experts are being allowed to testify, ruling on ASI's motion *in limine* without considering Structural's response in opposition would be unfairly prejudicial to Structural.

The Court therefore grants Structural's Motion for Leave (Doc. # 165) in part and accepts its untimely and non-compliant response to ASI's Motion *In Limine* to exclude Gerard K. Lynskey's reports and testimony. (*Id.*, Ex. A.)

2. Denying ASI's Motion *In Limine* to Exclude Gerard K. Lynskey (Doc. # 159) on the merits

The Court finds that Mr. Lynskey meets the requirements of FRE 702 and therefore denies ASI's Motion *In Limine* to Exclude Two Expert Reports and Testimony of Gerard K. Lynskey, P.E. (Doc. # 159) on the merits. Mr. Lynskey is qualified and Structural has shown that his reports and testimony would be relevant, helpful, and reliable as applied to the facts of this case at trial.

### a. Qualifications

ASI argues that Mr. Lynskey has no educational background in the slipform methodology and/or the design of unbonded post-tensioning systems—both of which are central to this dispute. *See* (Doc. # 159 at 4). ASI also argues that Mr. Lynskey has no past experience designing silo projects involving the use of an unbonded post-tensioning system as was used in the Project at issue in this case. *See* (*id.* at 4−5). Thus, ASI concludes that Mr. Lynskey is not "qualified by knowledge, skill, experience, training, or education to render" expert opinions as to design and/or construction of the unbonded post-tensioning slipform system at issue in this dispute. *See* (*id.* at 5) (citing *Estate of Grubbs v. Hernandez*, No. 18-1358, 2021 WL 4239021, at *9 (10th Cir. Sept. 17, 2021)).

Structural responds that Mr. Lynskey is qualified to opine as an expert in this case pointing to his more than 20 years of experience as a structural engineer and project manager, including his work in the design of structural systems and his specialization in "silo design, construction, behavior, and inspection/forensics since 2005." *See* (Doc. # 165-1 at 7). Structural also points out that Mr. Lynskey has the necessary education and licensing to testify as a structural engineer, including a Professional Engineer's license in Colorado. *See* (*id.* at 7). Finally, Structural argues that, "in his work with SSI Consulting, LLC, [Mr. Lynskey] has 'inspected thousands of silos' and has been the 'structural engineer of record for several silos, many utilizing the slip form method of construction as well as the structural engineer of record for dozens

10

of repairs to silos,'" and that Mr. Lynskey "knows and understands the differences between bonded and unbonded post-tensioning systems." (*Id.* at 7−8.)

The Court finds that Mr. Lynskey is qualified to offer his opinions in this case. As detailed by Mr. Lynskey himself, he has extensive expertise and experience in structural engineering, including when it comes to slip form silos, "having performed the design of reinforced (both conventionally reinforced with 'mild' reinforcement bars, as well as silos reinforced with bonded, post-tensioning) concrete silos to be constructed by the slip form process." *See* (Doc. # 159-1 at 7−8). Based on his education and experience, the Court agrees that it appears Mr. Lynskey actually has "significantly more design experience with post-tensioning of reinforced concrete silos than Messrs. Bjordahl, Blackmer, [] and Hamlin," as well as "more experience with the design, behavior, and repair of reinforced (both conventionally reinforced and post-tensioned) concrete silos than M[r]. Blackmer . . . ." *See* (*id.* at 9).

Given Mr. Lynskey's education, licensure, experience, and knowledge about the structure of concrete silos, including how to repair said silos (*see* Doc. # 159-1 at 7−9), simply because he may not have as much experience in this particularly novel (which both parties agree is the case) context of ASI's choice to use unbonded post-tensioning in the slip form context does not mean he is unqualified. *See*, *e.g.*, (Doc. # 165-1 at 10). This argument is the crux of ASI's attack on Mr. Lynskey's qualifications (*see* (Doc. # 159 at 4−5)), but the Court disagrees that this is disqualifying. Just because Mr. Lynskey may not have testified as an expert in this specific context before does not mean he is unqualified to opine on this novel approach. The Court reminds ASI that it

11

argued against this very same position in responding to Structural's Motion *In Limine* to exclude the testimony of Mr. Bjordahl. The Court held, "[p]rior expert testimony is just one of many factors which may be considered when assessing qualifications." (Doc. # 124 at 6) (quoting *Vaughn v. Safeway, Inc.*, No. 14-cv-01066-REB-NYW, 2015 WL 7307936, at *2 (D. Colo. Nov. 20, 2015)).

The Court therefore concludes that Mr. Lynskey is qualified to assert his opinions in this matter, including as to unbonded post-tensioning in the slip form context.

        *b.*      *Relevance and reliability of Mr. Lynskey's opinions*

ASI argues that, even if Mr. Lynskey qualifies as an expert in this case, "his testimony should nonetheless be excluded as the opinions being proffered are not actually based on facts or data and are completely speculative in nature." (Doc. # 159 at 5.) In particular, ASI attacks the opinions offered in Mr. Lynskey's second expert report about possible "alternative" reasons for the formation of the Horizontal Cold Joint Crack and whether it needed repair. *See* (*id.* at 6).

Structural responds that Mr. Lynskey's opinions in the second report are, in fact, based on facts or data available to Mr. Lynskey in this case, and that his opinions/conclusions have supporting evidence in this case when assessed in light of Mr. Lynskey's extensive experience with slip form construction. *See* (Doc. # 165-1 at 14). Specifically, Structural detailed the possible "alternative" reasons for the formation of the crack and what facts or data Mr. Lynskey based his opinions on:

- Lynskey concluded that one possible reason for the cold joint was "ASI's improper consolidation of concrete." In coming to that conclusion, Lynskey analyzed the ASI design drawings and photograph ST_0000000278. ASI Appx. at 052, Second Report, p. 3.

12

- Lynskey concluded that one possible reason for the cold joint was "changes in the concrete placement due to blow outs." In coming to that conclusion, Lynskey analyzed photos from the project and used his knowledge that several blowouts had occurred on the project. ASI Appx. at 053, Second Report, p. 4.

- Lynskey concluded that one possible reason for the cold joint was the "lack of coordination between ASI and its subcontractors." In coming to that conclusion, Lynskey specifically relied on his First Report, in which Lynskey analyzed project documents, expert reports, and deposition transcripts of such experts, among many other documents. ASI Appx. at 53, Second Report, p. 4.

- Lynskey concluded that one possible reason for the cold joint was concrete "truck drivers being diverted, taking breaks, issues with batching operations." In coming to that conclusion, Lynskey analyzed his prior experience with job sites which have had ready mix truck issues and the record of events involving ready mix trucks on the Project. ASI Appx. at 53, Second Report, p. 4.

(Doc. # 165-1 at 14−15.) Further, Structural detailed Mr. Lynskey's several bases on the facts of this case for his opinion that the crack did not need to be repaired. *See* (Doc. # 165-1 at 16). Mr. Lynskey testified to this in his second deposition and also provided these bases in his second expert report. *See* (*id.*).

Thus, the Court agrees that Mr. Lynskey's opinions are, in fact, based on facts and data provided to him in this case and his analysis of the project materials, photos and videos of the site, the reports of ASI's own claimed experts, and Mr. Lynskey's own extensive and thorough experience with similar projects. *See* (*id.* at 15). The Court also finds that these opinions are relevant and would be helpful to the Court as fact-finder in this case.

Further, the Court finds the fact that Mr. Lynskey never visited the silo site in issue (*see* Doc. # 159 at 6) goes to the weight, not the admissibility of his opinions. As

Structural argues, an expert does not need to visit the site or conduct any modeling or testing to be qualified as an expert. *See* (Doc. # 165-1 at 12) (citing Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of *or* personally observed.") (emphasis added); Fed. R. Evid. 703 Advisory Committee Notes to 1972 Proposed Rules ("The third source [of facts or data upon which expert opinions are based] contemplated by the rule consists of presentation of data to the expert outside of court and other than by his own perception."); *Wheatridge Office, LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1207-08 (D. Colo. 2022)).

The accuracy and quality of Mr. Lynskey's opinions and the reasons for making them may be sufficiently challenged during cross-examination. *See Crabbe*, 556 F. Supp. 2d at 1223 ("whether the facts used are qualitatively reliable is a question of the *weight* to be given the opinion by the factfinder, not the *admissibility* of the opinion") (emphasis in original); *Chimney Rock Pub. Power Dist. v. Tri-State Generation and Transmission Ass'n, Inc.*, No. 10-cv-02349-WJM-KMT, 2014 WL 1715096, at *3 (D. Colo. Apr. 30, 2014). Moreover, just as the Court held in ruling against Structural's motions *in limine*, "the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial." *Tyson Foods*, 565 F.3d at 779.

Accordingly, the Court denies ASI's Motion *In Limine* to Exclude Two Expert Reports and Testimony of Gerard K. Lynskey, P.E (Doc. # 159) on the merits.

   3. <u>Denying as moot Structural's Motion for Leave (Doc. # 165) in part to file its untimely Motion to Strike</u>

Given the Court's above ruling denying ASI's Motion *In Limine* to Exclude Two Expert Reports and Testimony of Gerard K. Lynskey, P.E. (Doc. # 159) on the merits, it need not consider Structural's untimely Motion to Strike ASI's Motion *In Limine* with respect to Mr. Lynskey's first expert report attached as Exhibit B to its Motion for Leave (Doc. # 165, Ex. B). The Court therefore denies as moot Structural's Motion for Leave (Doc. # 165) in part to file its untimely Motion to Strike (Doc. # 165, Ex. B).

**C.** **Summarily Striking Structural's Non-Compliant Motion *In Limine* to Exclude Expert Testimony From Kirk Meyer or to Disqualify Kirk Meyer as an Expert Witness (Doc. # 160)**

On April 18, 2025, Structural filed its fourth separate motion *in limine* in this case to exclude testimony from ASI's expert, Kirk Meyer. (Doc. # 160.) Just like all three of Structural's previous motions *in limine*, this Motion violates the Court's Standing Order on Civil Trial Procedures, specifically the eight-page limit on motions *in limine* found in CMA Civ. Trial Standing Order 43.1B(1)(g). *See* (Docs. ## 92 (19 pages), 93 (11 pages), 94 (13 pages), 160 (15 pages)). As ASI accurately points out, this is the <u>fifth</u> time that Structural has filed a motion that exceeded the page limits without first seeking leave of Court. *See* (Docs. ## 164 at 1 n.1, 166 at 1). In ASI's response in opposition to Structural's Motion for Leave, it argues that this Court should not grant Structural's post-facto request for leave to file its non-conforming Motion or let it alternatively file an eight-page-compliant Motion *In Limine* to exclude Kirk Meyer as an expert witness. (Doc. # 166 at 3−4, 7−8.)

15

In the Tenth Circuit, striking or disallowing pleadings that fail to comply with either the Local Rules of Practice or standard practice rules is an appropriate remedy. *See*, *e.g.*, *O'Connor v. Lafayette City Council*, No. 19-cv-1066-WJM-KLM, 2020 WL 5203792 (D. Colo. Sept. 1, 2020); *Pirnie v. Key Energy Servs., LLC*, No. 08-cv-01256-CMA-KMT, 2009 WL 1386997 (D. Colo. May 15, 2009) (striking a surreply brief in summary judgment proceeding that was filed without leave of court). Indeed, such a remedy has been endorsed by the Tenth Circuit and this Court. *Dubrovin v. The Ball Corp. Consol. Welfare Ben. Plan For Emps.*, No. 08-cv-00563-WYD-KMT, 2009 WL 5210498, at *1 (D. Colo. Dec. 23, 2009) ("[T]he Tenth Circuit has indicated that the court has discretion to strike materials that are in non-compliance with the Local Rules.") (citing *In Re Hopkins*, No. 98–1186, 1998 WL 704710, at *3 n.6 (10th Cir. Oct. 5, 1998)).

The Court has previously accepted Structural's motions that exceeded the page limits, but warned Structural almost three years ago that "further filings that do not conform to the Court's Practice Standards will be summarily stricken." (Doc. # 87.) *See also* (Doc. # 166 at 1−4). To play dumb now with respect to its current Motion *In Limine* and argue that Structural was unaware that the eight-page limit applied to its motion *in limine* is not only concerning, but disingenuous. Thus, the Court finds unpersuasive Structural's argument that it believed an unrelated 15-page rule applied.

Moreover, the Court finds no showing of substantial good cause to allow Structural's non-compliant motion *in limine*. *See* CMA Civ. Trial Standing Order 43.1B(1)(g). Structural summarily argues that "[a] case as complex as this one makes it virtually impossible to comply with the page limits set forth in the CMA Civ. Practice

Standard 43.1B(1)(g) for a Motion *in Limine* involving expert qualifications. As such, the issues on which ASI's purported expert, Kirk Meyer, opines, are varied and do not lend themselves to being limited to a maximum of eight pages." (Doc. # 165 at 5.) Not only was ASI able to comply with the eight-page limit for its own motion *in limine*, but countless parties that have come before the Court in years past have had no problem complying with the Court's Trial Standing Order. This case is not special and Structural has repeatedly failed to comply with both the page limits and with this Court's requirement that a party seek leave to file a non-compliant motion either before or concurrently with the motion. The Court has run out of patience with Structural.

The Court therefore denies Structural's post-facto Motion for Leave (Doc. # 165) in part rejecting and summarily striking its Motion *In Limine* to Exclude Expert Testimony from Kirk Meyer or to Disqualify Kirk Meyer as an Expert Witness (Doc. # 160) and denies Structural permission to file a subsequent eight-page-compliant motion.

### IV.   CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

- Defendant/Counter-Plaintiff Structural Technologies, LLC's Motion for Reconsideration of Motions *In Limine* (Doc. # 158) is DENIED in its entirety.

- Plaintiff/Counter-Defendant Agri-Systems, d/b/a ASI Industrial's Motion *In Limine* to Exclude Two Expert Reports and Testimony of Gerard K. Lynskey, P.E. (Doc. # 159) is DENIED on the merits.

17

- Defendant/Counter-Plaintiff Structural Technologies, LLC's Motion for Leave (Doc. # 165) is GRANTED IN PART AND DENIED IN PART as follows:

    - GRANTED in that the Court accepts its untimely and non-compliant response to ASI's Motion *In Limine* (Doc. # 165, Ex. A).

    - DENIED to the extent that Structural's Motion to Strike ASI's Motion *In Limine* (Doc. # 165, Ex. B) is moot.

    - DENIED to the extent that the Court rejects Structural's Motion *In Limine* to Exclude Expert Testimony from Kirk Meyer or to Disqualify Kirk Meyer as an Expert Witness (Doc. # 160) and denies Structural permission to file a subsequent eight-page-compliant motion.

- Defendant/Counter-Plaintiff Structural Technologies, LLC's non-compliant Motion *In Limine* to Exclude Expert Testimony From Kirk Meyer or to Disqualify Kirk Meyer as an Expert Witness (Doc. # 160) is summarily stricken.

DATED: June 19, 2025

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge